[Cite as *State v. Hollins*, 2011-Ohio-5588.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 5-10-41

    v.

KENNETH HOLLINS,                **O P I N I O N**

    DEFENDANT-APPELLANT.

---

**Appeal from Hancock County Common Pleas Court**
**Trial Court No. 2009 CR 257**

**Judgment Affirmed**

**Date of Decision:   October 31, 2011**

---

**APPEARANCES:**

    *Dennis C. Belli*  for Appellant

    *Mark C. Miller and Drew A. Wortman*  for Appellee

**ROGERS, P.J.**

{¶1} Defendant-Appellant, Kenneth Hollins, appeals the judgment of the Court of Common Pleas of Hancock County sentencing him to a nine-year prison term. On appeal, Kenneth contends that the trial court erred in denying his motion to suppress, and that he received ineffective assistance of counsel. Based on the following, we affirm the judgment of the trial court.

{¶2} In December 2009, the Hancock County Grand Jury indicted Kenneth on a single count of possession of a controlled substance, heroin, in violation of R.C. 2925.11(A), with the specification that Kenneth is a major drug offender pursuant to R.C. 2941.1410, a felony of the first degree. The indictment arose from the discovery of heroin in a vehicle initially stopped for speeding.

{¶3} Later that month, Kenneth entered a plea of not guilty to the sole count in the indictment.

{¶4} In March and April 2010, Kenneth filed a motion to suppress and supplemental brief in support of his motion to suppress, respectively. Kenneth argued, in pertinent part, that the officer, without reasonable articulable suspicion of criminal activity, prolonged the traffic stop beyond the time reasonably necessary to effectuate the initial purpose of the traffic stop, i.e., issuance of a warning or citation for speeding. As a result, Kenneth argued that any evidence obtained outside the time which was reasonably necessary to issue a warning or

citation for speeding must be suppressed as the discovery of such evidence occurred as a result of an unlawful seizure.

{¶5} In August 2010, the matter proceeded to a suppression hearing during which the following evidence and testimony was adduced.

{¶6} Trooper Jacob Fletcher testified that he is employed by the Ohio State Highway Patrol ("OSHP") and has been stationed at the Hancock County OSHP post for eight years. On December 12, 2009, at approximately 3:45 p.m., Trooper Fletcher was sitting stationary on Interstate 75 in the southbound rest area, near mile marker 153, monitoring traffic. Around this time Trooper Fletcher caught sight of a vehicle traveling southbound, at what he perceived to be a speed greater than the posted limit. To verify the vehicle's speed Trooper Fletcher employed a laser, which indicated that the vehicle was traveling seventy-four (74) miles per hour. A second laser reading, taken shortly after the first reading, indicated that the vehicle had decelerated to fifty-nine (59) miles per hour. Trooper Fletcher left his position and caught up to the vehicle. Prior to initiating the traffic stop, Trooper Fletcher pulled alongside the vehicle and witnessed the driver driving with both hands on the wheel and looking straight forward, a behavior Trooper Fletcher considered to be a criminal indicator. Thereafter, Trooper Fletcher initiated a traffic stop of the vehicle at approximately 3:47 p.m. Judgment Entry, p. 3. Upon initiating the traffic stop Trooper Fletcher ran the vehicle's license

plate and discovered that the vehicle was a rental and that it had not been reported stolen.

{¶7} Trooper Fletcher continued that upon approaching the driver's door he informed the driver, who was later identified as Darrell Hollins, that he was being stopped for speeding. Trooper Fletcher asked Darrell for his driver's license, the vehicle's registration, and proof of insurance. Darrell produced his driver's license and a rental agreement. At this time, Trooper Fletcher noticed three to four cell phones and power cords lying in the vehicle's center console, which he considered to be a criminal indicator as there were only two individuals in the vehicle. Upon receiving Darrell's driver's license and the rental agreement, Trooper Fletcher asked Darrell if he would step out of the vehicle, to which Darrell agreed. Trooper Fletcher explained that he customarily asks the driver to step out of the vehicle during traffic stops when passengers are present so he can discuss the violation with the driver without passenger involvement. Upon exiting the vehicle, Trooper Fletcher asked Darrell whether he had any weapons or contraband on his person, to which Darrell responded in the negative. Trooper Fletcher then asked Darrell if he would have a seat in the front passenger seat of the patrol car, and whether he would consent to a search of his person for weapons before he sat in the patrol car. Darrell consented to both requests.

{¶8} Trooper Fletcher continued that upon entering the patrol car he informed Darrell about his speed and asked whether he had any questions. Immediately thereafter, Trooper Fletcher began to conduct checks of Darrell's driver's license and the vehicle's information. Darrell had a valid Michigan driver's license. Upon reviewing the rental agreement, however, Trooper Fletcher noticed that Darrell's name did not appear on the rental agreement. On re-direct, Trooper Fletcher testified about the significance of the renter's absence from a rental vehicle.

> **Q: [Defense counsel] questioned you with regards to not having any knowledge when you initially stopped this vehicle that was stolen, that it was wanted, that it was used in a crime, that's correct, right?**
>
> **A: Yes.**
>
> **Q: Did your opinion change with regards to the automobile that you had stopped once you saw the rental agreement, I believe it's State's Exhibit 1, and [the] only listed driver was not present?**
>
> **A: Yes.**
>
> **Q: During your 8 years as a State Patrol Officer for the Ohio State Highway Patrol and numerous traffic stops you've made, have you ever encountered an individual that's told you he's had permission to drive a rental vehicle and you found that to be contrary to the evidence that you've later collected?**
>
> **A: Yes.**

Hearing Tr., pp. 68-69. Trooper Fletcher testified that the absence of the named renter, or other authorized driver, from a rental vehicle was a "big" criminal indicator. Id. at p. 68.

{¶9} Trooper Fletcher, in an effort to determine why Darrell was driving a vehicle rented under a third party's name, asked Darrell several basic questions, to wit: where were they coming from; where were they going; who rented the vehicle; why did they have the vehicle. According to Trooper Fletcher, Darrell stated that he and his brother, Kenneth, were driving from Detroit to Dayton to pick up their cousin, Troy Kyles, who rented the vehicle. Darrell further stated that he and Kenneth had traveled to Dayton with Kyles the previous night, and that he and Kenneth returned to Detroit the same night because he had to work in the morning. Trooper Fletcher testified that he found Darrell's story to be suspect and a criminal indicator. Specifically, Trooper Fletcher could not rationalize why an individual would drive from Detroit to Dayton, return to Detroit the same day for work, and return to Dayton the following day to pick up an acquaintance.

{¶10} After Darrell explained his recent and current travel plans, Trooper Fletcher asked Darrell whether he was listed as an additional driver. Darrell responded that he should have been listed as an additional driver. Darrell, however, produced no documentation to substantiate his claim, nor did he explain why he should have been listed as an additional driver.

**{¶11}** After speaking with Darrell, Trooper Fletcher requested a canine unit, which occurred at approximately 3:51 p.m. Judgment Entry, p. 3.

**{¶12}** After requesting the canine unit, Trooper Fletcher returned to the vehicle to speak with the vehicle's passenger, Kenneth. Trooper Fletcher asked Kenneth for identification, which Kenneth was unable to produce. Accordingly, Trooper Fletcher took down Kenneth's name and date of birth to verify his identity. Trooper Fletcher also asked Kenneth about his and Darrell's travel plans and who rented the vehicle. According to Trooper Fletcher, Kenneth stated that he and Kyles had traveled from Detroit to Dayton the previous night to party. Kenneth further stated that Darrell did not accompany them to Dayton the previous night, and that Kyles remained in Dayton while he returned to Detroit that night. After speaking with Kenneth, Trooper Fletcher returned to his patrol car.

**{¶13}** Upon returning to his patrol car, Trooper Fletcher again asked Darrell about his travel plans in an attempt to see whether his story would change. Darrell's explanation of his travel plans did not change. Trooper Fletcher testified that the inconsistencies between Darrell and Kenneth's stories were criminal indicators.

**{¶14}** Trooper Fletcher continued that due to a lack of documentation demonstrating that Darrell was an authorized driver and pursuant to OSHP

-7-

operating procedure he began the process of contacting the vehicle's owner, in this case Avis Car Rental Company ("Avis"). To that end, Trooper Fletcher, at approximately 3:59 p.m., requested his dispatcher, Tracy Koenig, to contact Avis to determine whether anyone other than Kyles could operate the vehicle. Judgment Entry, p. 3. At approximately 4:02 p.m., Koenig informed Trooper Fletcher that there were no additional drivers associated with the rental agreement, but that there may be a form attached to the rental agreement listing additional drivers. Upon inspection of the rental agreement, State's Exhibit 1, Trooper Fletcher found no additional forms listing additional drivers, and relayed the same to Koenig. At approximately 4:04 p.m., Koenig informed Trooper Fletcher that neither Darrell nor Kenneth was permitted to drive the vehicle, and that Avis wanted the vehicle to be detained. Judgment Entry, p. 4.[1]

{¶15} At approximately 4:05 p.m., the canine unit arrived on scene and conducted an exterior sniff of the vehicle. Id. The canine alerted to the driver side of the vehicle. After the canine alerted to the vehicle, Kenneth was asked to exit the vehicle and Trooper Fletcher conducted a search of his person, which revealed a small plastic bag of "green leafy material." Hearing Tr., p. 30. Thereafter, Trooper Fletcher placed Kenneth in the back of his patrol car, and conducted a thorough search of the rental vehicle. Trooper Fletcher searched the passenger

---

[1] Upon review of the video recording of the traffic stop, admitted as State's Exhibit 3, Koenig informs Trooper Fletcher that Avis wants the vehicle to be detained. See, also, Hearing Tr., p. 33.

compartment first and discovered the presence of a blunt in the ashtray. Trooper Fletcher then proceeded to search the vehicle's rear hatch compartment, or trunk, where he discovered a plastic bag containing approximately 250 grams of suspected heroin.

{¶16} Trooper Fletcher continued that he issued Darrell a warning for his speed. Trooper Fletcher testified that if the driver is the owner of the car and the driver's license matches the registration, issuance of a warning for a speeding violation takes approximately 8-10 minutes. Where, however, the owner of the vehicle is not present then issuance of a warning for a speeding violation can vary greatly in time.

{¶17} Tracy Koenig testified that she is employed by the OSHP as a dispatcher and has held that position for fourteen years. Koenig testified that she entered the information associated with the dispatch report, or CAD log, offered as State's Exhibit Two. Koenig testified that Trooper Fletcher requested her to call Avis and inquire whether any other individuals, besides Kyles, were authorized to operate the rental vehicle. Accordingly, Koenig contacted Avis at 3:59 p.m. and spoke with an Avis representative, whom she identified as Fred, I.D. number 10387. Particularly, Koenig entered the following entry at 4:04 p.m.: "PX to Avis checking status of rental & auth[orized] drivers. Troy Kyles is the renter and no additional drivers are listed. If no form attached to rental agreement then no one

was adde[d] later." State's Exhibit 2, p. 1. Koenig further testified that the Avis representative with whom she spoke advised her to detain the vehicle.

{¶18} After Koenig's testimony the State rested.

{¶19} The defense called Fred Nehmeh as their first witness. Nehmeh testified that he is employed with Avis in Detroit. Nehmeh testified that Avis offers corporate accounts to its business customers. One of the attributes of a corporate account is that employees may drive the rental vehicle if their use of the vehicle is incidental to the business and the Corporate AWD number is printed on the rental agreement. See State's Exhibit C; Judgment Entry, p. 6.

{¶20} Nehmeh continued that he was employed with Avis on December 12, 2009. During his shift he received a phone call from the OSHP inquiring who may operate the rental vehicle stopped by Trooper Fletcher. Nehmeh testified:

> **A: First I asked her for the car number, or the license plate number, which I got from them. I pulled up the contract and they asked me what's the name on the contract. So I told them it was Troy Kyles. He's the one that rented the car. Then they asked me (sic) anybody else listed as additional driver. I'm like, there's nobody listed here, but in our policy coworker and spouses automatically drive the car. That's the Avis corporate policy.**

Hearing Tr., p. 109.

{¶21} On cross-examination Nehmeh testified that he did not inform the OSHP officer whether the account was a personal or corporate account. Nehmeh

testified that, typically, additional drivers would appear under the renter's name, in this case Kyles' name. On re-direct, Nehmeh testified that he did not make any statements to the OSHP dispatcher about detaining or releasing the vehicle.

{¶22} Troy Kyles testified that he rented the vehicle in question on December 11, 2009, and drove from Detroit to Dayton on that same day with Darrell and Kenneth. Kyles testified that he gave Darrell permission to drive the rental vehicle back to Detroit on the night of December 11, 2009, because Darrell had to work the following morning. Kyles further testified that Darrell was going to return to Dayton the following day to pick him up and return to Detroit.

{¶23} Shortly after the suppression hearing the trial court filed its judgment entry. Based on the evidence and testimony adduced during the hearing the trial court made the following findings of fact:

> **On Dec[ember] 12, 2009 at 3:47 pm, Defendant Hollins was a passenger in a vehicle stopped for speeding near milepost 153 on Interstate 75 in Hancock County. Trooper Fletcher checked the vehicle's speed by lazer (sic) and found it to be traveling at seventy-four (74) mph in a sixty-five (65) mph zone. During the course of this stop, Trooper Fletcher asked for the driver's license and registration. The driver was identified as Darrell Hollins. The driver gave Trooper Fletcher a valid Michigan driver's license and a rental agreement. The rental agreement did not list the driver as a permissible driver and listed only Troy Kyles as a permissible driver. Trooper Fletcher then asked Darrell Hollins to exit the vehicle. Upon exiting the vehicle, the driver consented to being frisked. No contraband was found on the person of Darrell Hollins and he was placed in Trooper**

**Fletcher's vehicle while the defendant remained in the rental car.**

**Trooper Fletcher then asked Darrell Hollins about his travel destination. Darrell Hollins responded that he was driving from Detroit to Dayton with his brother, the defendant Kenneth Hollins, to pick up his cousin, and that he had been in Dayton the night before. Trooper Fletcher then requested that a canine unit report to the site of the traffic stop and that the post dispatcher contact the Avis car rental company to determine if a non-listed driver was permitted to operate the vehicle. It is unclear which of those two actions took place first. However, the CAD Log, State's Exhibit 2, (which only keeps a record of when the Dispatcher types the Officer's actions into the computer – *not* when the actions actually occurred,) lists the request for a canine unit at 3:51 pm and the request for clarification from Avis at 3:59 pm.**

**Trooper Fletcher then returned to the stopped vehicle to question the defendant Kenneth Hollins. When asked his travel destination, defendant replied that he was traveling to pick up his cousin but that the driver had not been in Dayton the night before. Trooper Fletcher then returned to his cruiser to verify the driver's statements that he had been in Dayton the night before. The driver again said he was in Dayton the previous night.**

**At 4:04 pm, according to the CAD Log, Trooper Fletcher was informed that neither the driver nor the defendant was permitted to drive the vehicle under the Avis rental agreement. (Again, the CAD Log only represents when the dispatcher logged the occurrence in the computer, not the actual time it occurred.) According to the CAD Log, the canine unit arrived on scene no later than 4:05 pm – 18 minutes into the traffic stop.**

**The canine then was walked around the motor vehicle and alerted on the stopped vehicle while defendant was still in the passenger seat. Defendant was then ordered out of the vehicle and a plastic bag of green, leafy substance was found on his**

-12-

**person. In a subsequent search of the vehicle, Trooper Fletcher found a plastic bag containing what appeared to be heroin, in the trunk of the rental car.**

**\* \* \***

**During the traffic stop at hand, Trooper Fletcher was given a rental agreement that did not list the driver as being allowed to operate the vehicle. Also, there was no attachment or addendum on the agreement indicating the driver was permitted to operate the vehicle. In addition, the patrol post dispatcher had given Trooper Fletcher no indication that Avis Car Rental had verified that the driver was permitted to drive the rental vehicle. As such, Trooper Fletcher was being "reasonable and diligent" by investigating whether the driver was allowed to be operating the vehicle. The CAD Log shows Trooper Fletcher requested dispatch to contact the rental car agency no later than 3:59 pm. Furthermore, no later than 4:04 pm, Trooper Fletcher was told that the driver was not permitted to drive the rental vehicle. Trooper Fletcher also testified that, while stops to issue a warning involving the owner of the car take eight to ten minutes, stops where the vehicle owner is not present vary greatly in length. Trooper Fletcher further testified that, throughout the stop, he was conducting checks of the defendant's driver's license and identity in addition to waiting to see if the driver was permitted to drive the rental vehicle.**

**\* \* \***

**Defendant, through counsel, contends that an Avis representative told the dispatcher that co-workers are permitted to drive a vehicle rented under a corporate policy. Defendant also contends that he and the driver were employees of the corporation under which the car was rented. Regardless of Avis' actual policy, there is no evidence that such information was passed along to Trooper Fletcher. Furthermore, Defendant's Exhibit C, an e-mail from an Avis representative, explains that for employees to drive a rental car under a corporate account, the "corporate AWD number" must be**

-13-

> **printed on the rental agreement. Troy Kyles' AWD number, identified on Defendant's Exhibit D as "Z391037," is nowhere to be found on the rental agreement. There is also no evidence that the rental agreement can be identified as under a corporate policy, as it only listed the name "Troy Kyles" as a driver, not a corporation.**

Judgment Entry, pp. 3-6. Based on these findings the trial court concluded that Trooper Fletcher's "investigation during the traffic stop was reasonable and diligent," and that the "extension of the traffic stop had not been unconstitutionally prolonged at the time of the canine sweep." Id. at p. 7. Accordingly, the trial court denied Kenneth's motion to suppress.

{¶24} In September 2010, the State dismissed the sole specification. Thereafter, Kenneth entered a plea of no contest to the sole count in the indictment, which the trial court accepted and entered a finding of guilt.

{¶25} In December 2010, the matter proceeded to sentencing. The trial court sentenced Kenneth to a nine-year prison term on the sole count.

{¶26} It is from this judgment that Kenneth appeals, presenting the following assignments of error for our review.

### *Assignment of Error No. I*

**THE COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION TO SUPPRESS A QUANTITY OF HEROIN THAT WAS SEIZED BY THE HIGHWAY PATROL DURING A WARRANTLESS SEARCH OF THE LOCKED TRUNK OF A VEHICLE IN WHICH HE WAS A**

**PASSENGER, IN VIOLATION OF HIS RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTILE I, AND SECTION 14 OF THE OHIO CONSTITUTION.**

*Assignment of Error No. II*

**DEFENSE COUNSEL'S FAILURE TO CHALLENGE THE HIGHWAY PATROL TROOPER'S EXTENSION OF THE SCOPE OF THE SEARCH FROM THE PASSENGER COMPARTMENT TO THE LOCKED TRUNK OF THE VEHICLE DEPRIVED DEFENDANT-APPELLANT OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.**

*Assignment of Error No. I*

{¶27} In his first assignment of error, Kenneth contends that the trial court erred in denying his motion to suppress. Specifically, Kenneth contends that the search of the rental vehicle was unconstitutional because it was the result of an unconstitutionally prolonged detention, and that the canine alert on the passenger compartment of the vehicle did not give Trooper Fletcher probable cause to search the vehicle's trunk. We disagree.

{¶28} "Appellate review of a decision on a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented. *State v. Johnson* (2000), 137 Ohio App.3d 847, 850. Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must

accept the trial court's findings of facts so long as they are supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶100, citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 20. The appellate court must then review the application of the law to the facts de novo. *Roberts*, supra, citing *Burnside*, 2003-Ohio-5372, at ¶8.

{¶29} Initially, we note that Kenneth does not challenge the original basis for the traffic stop, i.e., the speeding violation. Rather, Kenneth, in his first assignment of error, challenges the duration of the stop and the scope of the search. Close review of Kenneth's motion to suppress, however, reveals that he did not challenge the scope of the search. Rather, he only challenged the constitutionality of the stop as it relates to its duration. Nevertheless, Kenneth now challenges the scope of the search as though the matter was adjudicated below. Because Kenneth did not raise the scope of the search below, a fact he attributes to the ineffectiveness of trial counsel in his second assignment of error, we will not address the same in his first assignment of error. Rather, we will consider the matter in Kenneth's second assignment of error. Accordingly, we now consider whether the duration of the stop was unconstitutionally prolonged.

{¶30} The stopping of a vehicle and the detention of its occupants is a seizure within the meaning of the Fourth Amendment. *State v. Johnson*, 3d Dist. No. 5-07-43, 2008-Ohio-1147, ¶16, citing *Delaware v. Prouse* (1979), 440 U.S.

648, 653, 99 S.Ct. 1391, 1396. Where the defendant challenges the duration of the seizure, the government must present facts that justify its duration. *State v. Hobbs*, 9th Dist. No. 24764, 2010-Ohio-420, ¶11, citing *Florida v. Royer* (1983), 460 U.S. 491, 500, 103 S.Ct. 1319. When one has been detained so that the police may investigate a traffic violation, the police may detain the individual for the length of time necessary to check the driver's license, vehicle's registration, and the vehicle's license plate. *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶12. "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." Id., quoting *State v. Carlson* (1995), 102 Ohio App.3d 585, 598.

{¶31} If, during the investigation of the events that gave rise to the initial stop, the officer discovers additional facts from which it is reasonable to infer additional criminal activity; the officer is permitted to lengthen the duration of the stop to investigate such suspicions. *State v. Williams*, 9th Dist. No. 09CA009679, 2010-Ohio-3667, ¶15, citing *Batchili*, 2007-Ohio-2204, at ¶15; *State v. Robinette*, 80 Ohio St.3d 234, 241, 1997-Ohio-343.

{¶32} In addition, "[t]he use of a drug-detection dog does not constitute a 'search,' and an officer is not required, prior to a dog sniff, to establish either

probable cause or a reasonable suspicion that drugs are concealed in a vehicle." *State v. Chambers*, 3d Dist. No. 5-10-29, 2011-Ohio-1305, ¶25, discretionary appeal denied, 129 Ohio St.3d 1451, 2011-Ohio-4217, quoting *State v. Whitman*, 184 Ohio App.3d 733, 2009-Ohio-5647, ¶9, citing *Illinois v. Caballes* (2005), 543 U.S. 405, 409, 125 S.Ct. 834; *United States v. Place* (1983), 462 U.S. 696, 707, 103 S.Ct. 2637. Consequently, a law enforcement officer needs no suspicion to request a canine sniff nor does the officer need suspicion to conduct an exterior canine sniff of the vehicle as long as it is done contemporaneously with the legitimate activities associated with the traffic violation. *State v. Keller*, 2d Dist. No. 17896, 2000 WL 20873, *5; *Carlson*, 102 Ohio App.3d at 594; *Chambers*, 2011-Ohio-1305, at ¶25, citing *Whitman,* 2009-Ohio-5647, at ¶9, citing *Caballes,* 543 U.S. at 409.

*Investigation of Rental Agreement during Traffic Stop*

**{¶33}** Kenneth contends that *Batchili's* holding concerning permissible background checks performed during a stop for a traffic violation does not extend to an investigation of a rental agreement. Specifically, Kenneth contends that an officer acts outside the investigatory scope set forth in *Batchili* when he or she makes or attempts to make contact with the vehicle's registered owner to ascertain whether the vehicle's occupants are authorized to operate the vehicle in the absence of the renter or listed driver. We disagree.

**{¶34}** This Court and others have found that an officer, while conducting a stop for a traffic violation, may, as part of his or her investigation, review a rental agreement, if one exists, in addition to conducting background checks of the driver's license, vehicle registration, and license plate. In *State v. Chambers*, a case factually similar to the present case, this Court found that the duration of the stop was not unconstitutionally prolonged for the purpose of conducting an exterior canine sniff of a rental vehicle because the sniff coincided with a pending review of a rental agreement to verify whether the defendant was authorized to operate the rental vehicle. *Chambers*, 2011-Ohio-1305, at ¶26; see, also, *State v. Bell*, 12th Dist. No. CA2001-06-009, 2002-Ohio-561, *3, discretionary appeal denied, 95 Ohio St.3d 1486, 2002-Ohio-2625.

**{¶35}** Federal courts have also held that an officer, while conducting a stop for a traffic violation, may review a rental agreement in addition to conducting background checks of the driver's license and the vehicle's registration. *U.S. v. Kitchell* (C.A.10, 2011), 653 F.3d 1206, 1218 (determining that examining the rental agreement and inquiring why the driver was operating a vehicle leased to another individual was reasonably related to the initial purpose of the stop); *U.S. v. Bell* (C.A.6., 2009) 555 F.3d 535, 542, (determining that questioning the driver whether he was authorized to operate the rental vehicle in the absence of the renter was within the initial purpose of the stop); *U.S. v. Bonilla* (C.A.6, 2009), 357

Fed.Appx. 693, 696 (finding that requesting a driver's license, registration, rental papers, running a computer check thereon, and issuing a citation do not exceed the scope of a traffic stop for a speeding violation), citing *U.S. v. Hill* (C.A.6, 1999), 195 F.3d 258, 269; *U.S. v. Garrido-Santana* (C.A.6, 2004), 360 F.3d 565, 572-73 (finding that the officer did not unconstitutionally prolong the stop for a traffic violation to verify whether the driver could operate the vehicle, as the rental agreement did not contain the driver's name, and the driver's signature on the agreement was illegible); *U.S. v. Brigham* (C.A.5, 2004), 382 F.3d 500, 507-08 (finding no constitutional impediment to a law enforcement officer's request to examine a driver's license, vehicle registration, or rental papers during a traffic stop and to run a computer check thereon); see, also *U.S. v. Roberts* (S.D. Ohio 2005), 492 F.Supp.2d 771, 775; *U.S. v. Randall* (C.A. 6, 2003), 62 Fed.Appx. 96, 101.

{¶36} In light of the foregoing, we find that the holding in *Batchili* should not be read so narrowly as to preclude an officer from reviewing a rental agreement during a stop for a traffic violation. Furthermore, we find that it is neither necessary nor prudent to proscribe the exact degree to which an officer may investigate irregularities or inconsistencies in a rental agreement. Rather, we find that the reasonableness of an officer's investigation of irregularities in a rental agreement depends upon the totality of the circumstances surrounding the stop.

See *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 108-09, 98 S.Ct. 330 ("The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' "), quoting *Terry v. Ohio* (1968), 392 U.S. 1, 19, 88 S.Ct. 1868.

*Driver's Presence in Patrol Car During Stop*

{¶37} Kenneth also contends that the stop, as it related to the traffic violation, was complete the moment Darrell was asked to sit in the front seat of the patrol car. Consequently, Kenneth contends, albeit indirectly, that his continued seizure beyond the moment Darrell was asked to sit in the patrol car was unconstitutional because the officer was prolonging the purpose of the stop for reasons other than investigating the traffic violation and without reasonable articulable suspicion of past or present criminal activity. We disagree.

{¶38} The mere act of having the driver sit in the patrol car during a traffic stop neither terminates nor abandons the initial purpose of the stop. An officer may, during a routine traffic stop, have the driver sit in his or her patrol car. *State v. Lozada*, 92 Ohio St.3d 74, 76, 2001-Ohio-149, citing *Carlson*, 102 Ohio App.3d at 595-96; *Bay Village v. Lewis*, 8th Dist. No. 87416, 2006-Ohio-5933, ¶4. Whether the driver's presence in the patrol car unconstitutionally prolongs the stop is dependent upon the purpose of having the driver in the patrol car, e.g., was the

purpose to facilitate background checks and issuance of the citation or was it a dilatory tactic. In determining the purpose of having the driver sit in the patrol car the court must consider the totality of the circumstances.

*Totality of the Circumstances*

{¶39} The record herein demonstrates that the stop was not unconstitutionally prolonged for the purpose of conducting a canine sniff. Upon stopping the vehicle, Trooper Fletcher immediately began to conduct a routine traffic stop, asking Darrell for his driver's license, the vehicle's registration, and proof of insurance. In return, Trooper Fletcher received Darrell's driver's license and a rental agreement.

{¶40} After receiving Darrell's license and the rental agreement, Trooper Fletcher asked Darrell to join him in the front seat of his patrol car, to which Darrell consented. Based on Trooper Fletcher's testimony and independent review of the video recording of the stop, Darrell's presence in the patrol car facilitated the investigation and issuance of the subsequent warning.

{¶41} Upon entering the patrol car, Trooper Fletcher began checking Darrell's driver's license and spoke with Darrell about his speed and travel plans. During this time, Trooper Fletcher noticed that the rental agreement did not list Darrell as the renter or an authorized driver. Due to this inconsistency it was reasonable for Trooper Fletcher to conduct further investigation. *Carlson*, 102

Ohio App.3d at 598 (determining that it was reasonable for a trooper to investigate why the name and state listed on the vehicle's registration were different from that of defendant's driver's license). First, Trooper Fletcher endeavored to resolve the matter via discourse with Darrell and Kenneth. Apparently unsatisfied with their inconsistent explanations, Trooper Fletcher, pursuant to OSHP operating procedure, requested dispatch to contact Avis to determine whether Darrell or Kenneth were in lawful possession of the vehicle and authorized to operate the same. In light of the facts known to Trooper Fletcher at the time of the request, we find that Trooper Fletcher's investigation was reasonable and not outside the initial investigative scope of the stop. See *Chambers*, 2011-Ohio-1305, at ¶26; *Bell*, 2002-Ohio-561, at *3. Several minutes later Trooper Fletcher was advised that Avis wanted the vehicle to be detained, as neither Darrell nor Kenneth was authorized to operate the vehicle.[2]

{¶42} Once Trooper Fletcher was informed that Avis wanted the vehicle to be detained, further detention of the vehicle and its occupants became inconsequential in determining whether the duration of the stop was unconstitutionally prolonged. The moment Trooper Fletcher was informed that

---

[2] Based on our reading of the transcript and the trial court's judgment entry it appears as though the issue of whether Nehmeh informed the OSHP to detain the rental vehicle became an issue of credibility, as evidence was presented on the matter by both parties. Since a trial court is in the best position to resolve issues of credibility, *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, and there is competent, credible evidence to support the trial court's finding that Nehmeh informed the OSHP to detain the rental vehicle, we will not disturb this finding on appeal.

Avis wanted the vehicle to be detained Darrell and Kenneth were no longer being seized based solely on the initial traffic violation or Trooper Fletcher's suspicions. Rather, Darrell and Kenneth's continued presence was the result of the owner's request to detain the vehicle, and as such their continued presence no longer implicated the Fourth Amendment. Consequently, the fact that the canine unit arrived one minute after Trooper Fletcher had completed his background checks of Darrell's license, the vehicle's registration, and the rental agreement bears no consequence in determining whether the duration of the stop was unconstitutionally prolonged.

{¶43} Having considered the totality of the circumstances surrounding the stop, we find that Trooper Fletcher did not prolong the detention any longer than necessary to effectuate the initial purpose of the stop. Consequently, Kenneth was not unconstitutionally seized at the moment the canine alerted to the vehicle, which gave Trooper Fletcher probable cause to search the vehicle.

{¶44} Accordingly, we overrule Kenneth's first assignment of error.

*Assignment of Error No. II*

{¶45} In his second assignment of error, Kenneth contends that he received ineffective assistance of counsel. Specifically, Kenneth contends that trial counsel failed to challenge Trooper Fletcher's extension of his search from the passenger compartment to the trunk. We disagree.

-24-

{¶46} An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. *State v. Bradley* (1989), 42 Ohio St.3d 136, paragraph two of syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. Id*.,* at paragraph three of syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *State v. Waddy* (1992), 63 Ohio St.3d 424, 433, superseded by constitutional amendment on other grounds as recognized by *State v. Smith,* 80 Ohio St.3d 89, 103, 1997-Ohio-355.

{¶47} Furthermore, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. *State v. Malone* (1989), 2d Dist. No. 10564, 1989 WL 150798. "Ineffective assistance does not exist merely because counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it." Id*.,* quoting *Smith v. Murray* (1986), 477 U.S. 527, 535, 106 S.Ct. 2661 (internal quotation omitted).

{¶48} The United States Supreme Court has held that the "failure to file a suppression motion does not constitute per se ineffective assistance of counsel." *Kimmelman v. Morrison* (1986), 477 U.S. 365, 384, 106 S.Ct. 2574, cited in *State*

*v. Madrigal,* 87 Ohio St.3d 378, 389, 2000-Ohio-448. There must also be a reasonable probability that the motion will be successful. *State v. Ligon,* 3d Dist. No. 4-2000-25, 2001-Ohio-2231. Thus, this Court's determination of whether Kenneth's trial counsel was ineffective relies upon whether there was a reasonable probability that a motion to suppress would have been successful. *State v. Pierce,* 3d Dist. No. 11-09-05, 2010-Ohio-478, ¶34.

**{¶49}** A motion challenging the scope of the search would not have been successful, as Kenneth lacked standing to challenge the same. It is well established that a passenger of a vehicle does not have standing to challenge the search of the vehicle and its contents absent some proprietary or possessory interest in the vehicle and its contents. *State v. Weis*, 3d Dist. No. 10-06-22, 2007-Ohio-2279, ¶¶21-24, citing *Rakas v. Illinois* (1978), 439 U.S. 128, 99 S.Ct. 421. Here, Kenneth was a passenger in a rental vehicle that was rented by an absent third party. The record herein is devoid of any evidence that Kenneth had a proprietary or possessory interest in the vehicle, and Kenneth advances no arguments establishing the same. Consequently, trial counsel was not ineffective, as a motion challenging the scope of the search would have failed for lack of standing. See *State v. Stoddard*, 3d Dist. No. 9-89-05, 1990 WL 72397, *2; *State v. Tibbetts*, 92 Ohio St.3d 146, 165, 2001-Ohio-132 (denying defendant's ineffective assistance of counsel claim for failure to file suppression motion

concerning the scope of a vehicle search because the motion, had it been filed, was "certain to fail" as defendant had no proprietary or possessory interest in the vehicle or its contents).

{¶50} Since we find no error in trial counsel's failure to challenge the scope of Trooper Fletcher's search, we find no error in trial counsel's performance.

{¶51} Accordingly, we overrule Kenneth's second assignment of error.

{¶52} Having found no error prejudicial to Kenneth herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**