[Cite as *State v. McMahon*, 2013-Ohio-2557.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-120728 |
|  |  | TRIAL NO. 12TRC-34824B |
| Plaintiff-Appellant, | : |  |
|  |  | *O P I N I O N.* |
| vs. | : |  |
| SEAN MCMAHON, | : |  |
| Defendant-Appellee. | : |  |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: June 21, 2013

*John Curp*, City Solicitor, *Charles A. Rubenstein*, City Prosecutor, and *William T. Horsely*, Senior Assistant City Prosecutor, for Plaintiff-Appellant,

*Peter Rosenwald*, for Defendant-Appellee.

Please note: this case has been removed from the accelerated calendar.

SYLVIA S. HENDON, Presiding Judge.

{¶1} The city of Cincinnati has appealed from the trial court's entry granting defendant-appellee Sean McMahon's motion to suppress the results of a breath test taken on an Intoxilyzer 8000 machine. The trial court suppressed the results of McMahon's breath test after determining that the director of health had not promulgated the necessary requirements under R.C. 3701.143 for obtaining the access card required for operation of an Intoxilyzer 8000 machine.

{¶2} Because we find that the director of health has promulgated the necessary requirements for the issuance of an access card, we reverse the trial court's entry granting McMahon's motion to suppress.

### Factual Background

{¶3} On December 3, 2011, at approximately 3:00 a.m., McMahon was pulled over for speeding by Ohio State Highway Patrol Trooper Joseph Westhoven. After stopping McMahon, Trooper Westhoven noted that McMahon's eyes were bloodshot and that an odor of alcohol was emanating from the car. McMahon admitted that he had consumed alcohol prior to operating his vehicle. He submitted to various field sobriety tests at the scene of the stop, and, at the conclusion of the tests, he was placed under arrest. McMahon was transported to the Union Township Police Department, where he submitted to a breath test on an Intoxilyzer 8000 machine.

{¶4} McMahon was charged with speeding in violation of R.C. 4511.21, operating a motor vehicle while under the influence of alcohol in violation of R.C.

4511.19(A)(1)(a), and operating a motor vehicle with a prohibited concentration of alcohol in his breath in violation of R.C. 4511.19(A)(1)(d).

{¶5} McMahon filed a motion to suppress all evidence stemming from his arrest, including evidence concerning the field sobriety tests and the results of the breath test taken on the Intoxilyzer 8000 machine. In ruling on McMahon's motion to suppress, the trial court determined that Trooper Westhoven had a reasonable suspicion to stop McMahon for a traffic violation and had probable cause to place McMahon under arrest. But the court suppressed the results of the breath test taken on the Intoxilyzer 8000 machine after determining that the department of health had failed to promulgate the qualifications required for the issuance of an access card, which was necessary for the operation of the Intoxilyzer 8000 machine. The city has appealed, arguing in its sole assignment of error that the trial court erred in suppressing the results of McMahon's breath test.

### Standard of Review

{¶6} Our review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. We must accept the trial court's findings of fact if they are supported by competent and credible evidence. But we review de novo the trial court's application of the relevant law to those facts. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

### Access Card Qualifications

{¶7} We must determine whether the trial court correctly found that the director of health had failed to promulgate the qualifications required for the issuance of an access card to those seeking to operate an Intoxilyzer 8000 machine.

In so concluding, the trial court found that, although an operator of the Intoxilyzer 8000 machine was required to have an operator access card, the director had only promulgated qualifications for the issuance of permits, and not access cards. Under the trial court's analysis, no person could become qualified to operate the Intoxilyzer 8000, and any breath test taken on that machine would be inadmissible in a prosecution under R.C. 4511.19.

{¶8} R.C. 3701.143 charges the director of the department of health with implementing methods for analyzing a person's breath, blood, or other bodily substance in order to determine the amount of alcohol in the particular bodily substance. It provides that "[t]he director shall approve satisfactory techniques or methods, ascertain the qualifications of individuals to conduct such analyses, and issue permits to qualified persons authorizing them to perform such analyses." R.C. 3701.143.

{¶9} Ohio Adm.Code Chapter 3701-53 contains the department of health's codification of the methods, techniques, and qualifications that it was instructed to implement under R.C. 3701.143. Ohio Adm.Code 3701-53-02(A)(3) specifically provides that the Intoxilyzer 8000 is an approved breath testing instrument. And Ohio Adm.Code 3701-53-09 explains how a person becomes qualified to operate that instrument. Pursuant to the administrative code, those permitted to use the Intoxilyzer 8000 machine are referred to as operators. Persons desiring to become operators of the Intoxilyzer 8000

> shall apply to the director of health for operator access cards on forms prescribed and provided by the director of health. The director of health shall issue operator access cards to perform tests to determine

the amount of alcohol in a person's breath to individuals who qualify under the applicable provisions of rule 3701-53-07 of the Administrative Code.

Ohio Adm.Code 3701-53-09(D).

{¶10} In plain terms, those desiring to operate the Intoxilyzer 8000 must apply for an operator access card, which the director of health shall then issue to those who qualify under the provisions of Ohio Adm.Code 3701-53-07. Turning to that provision, entitled "Qualifications of personnel," the code provides that

An individual meets the qualifications for an operator's permit by: (1) Being a high school graduate or having passed the "General Education Development Test"; (2) Being a certified law enforcement officer sworn to enforce sections 4511.19 and/or 1547.11 of the Revised Code, or any other equivalent statute or local ordinance prescribing a defined or prohibited breath alcohol concentration, or a certified corrections officer, and; (3) Having demonstrated that he or she can properly operate the evidential breath testing instrument by having successfully completed a basic operator or conversion training course for the type of approved evidential breath testing instrument for which he or she seeks a permit.

Ohio Adm.Code 3701-53-07(E). Ohio Adm.Code 3701-53 additionally provides qualifications for the issuance of senior operator permits, but it makes no mention of separate qualifications for the issuance of an operator access card as described in Ohio Adm.Code 3701-53-09(D). Based on the absence of language specifically listing qualifications for an operator access card, the trial court determined that the director

of health had failed to promulgate any regulations for the issuance of that type of card. The city contends that an access card is the type of permit that is issued under Ohio Adm.Code 3701-53-07(E) to those qualified to operate the Intoxilyzer 8000, so there are no separate or distinct qualifications that must be met to be issued an access card.

{¶11} Mary Martin, the department of health's program administrator for alcohol and drug testing, testified at the suppression hearing regarding the issuance of access cards. According to Martin, an individual desiring to operate the Intoxilyzer 8000 must first fill out an application pursuant to Ohio Adm.Code 3701-53-09(D). The individual must then meet the qualifications listed above and found in Ohio Adm.Code 3701-53-07(E). According to Martin, an access card is the type of permit that is issued to an operator of the Intoxilyzer 8000.

{¶12} When interpreting a statute, our primary concern is to give effect to legislative intent. *Griga v. DiBenedetto*, 1st Dist. No. C-120300, 2012-Ohio-6097, ¶ 10. The legislature "will not be presumed to have intended to enact a law producing unreasonable or absurd consequences." *State v. Steele*, 1st Dist. No. C-100637, 2011-Ohio-5479, ¶ 13, quoting *State ex rel. Cooper v. Savord*, 153 Ohio St. 367, 92 N.E.2d 390 (1950), paragraph one of the syllabus.

{¶13} After a detailed review of the relevant statutes, we find that the department of health has promulgated the necessary qualifications for the issuance of an operator access card. We are persuaded by Martin's testimony espousing the department of health's position that the access card is the type of permit issued to an operator of an Intoxilyzer 8000 machine. When a statue is silent or ambiguous with respect to an issue, a court must give deference to an agency's interpretation of its

own regulations if the interpretation is reasonable. *Wells Fargo Bank, N.A. v. Isaacs*, 1st Dist. No. C-100111, 2010-Ohio-5811, ¶ 9-10, citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Here, the department of health's position that an access card is the type of permit that is issued to an operator of an Intoxilyzer 8000 under Ohio Adm.Code 3701-53-07(E) comports with R.C. 3701.143, which authorizes the director of health to issue permits to qualified persons, but does not reference the issuance of access cards.

{¶14} And the relevant administrative code provisions, when read in conjunction, support the department of health's interpretation. Ohio Adm.Code 3701-53-09(D) indicates that individuals qualified to use the Intoxilyzer 8000 machine are referred to as operators, and that such operators shall be issued access cards to perform breath tests. Ohio Adm.Code 3701-53-07 provides qualifications for the issuance of either operator permits or senior operator permits; it categorizes the issuance of permits into these two groups, rather than by the type of machine being operated. Since users of the Intoxilyzer 8000 machine are operators, reason dictates that they would be issued, if the required qualifications are met, operator permits under Ohio Adm.Code 3701-53-07(E). It is a reasonable interpretation of these provisions that the access card referenced in Ohio Adm.Code 3701-53-09(D) is the type of permit issued to an operator of an Intoxilyzer 8000 machine under Ohio Adm.Code 3701-53-07(E).

{¶15} This interpretation prevents the severe and unreasonable effect that would result from the trial court's ruling, which would be the exclusion of any breath test administered on an Intoxilyzer 8000 machine. And it gives effect to the intent of

the legislature and the department of health, namely, to have qualified operators of the Intoxilyzer 8000 be issued access cards so that they may conduct breath tests on the machine, and to have the results of those tests be admissible in a prosecution under R.C. 4511.19.

{¶16} Because the department of health has promulgated the necessary requirements for an operator of the Intoxilyzer 8000 to be issued the access card required to use that machine, we hold that the trial court erred in granting McMahon's motion to suppress on that ground. The city's assignment of error is sustained, and the judgment of the trial court is reversed. This cause is remanded for further proceedings consistent with the law and this opinion.

Judgment reversed and cause remanded.

**DINKELACKER** and **DEWINE, JJ.,** concur.

Please note:
   The court has recorded its own entry on the date of the release of this opinion.