[Cite as *State v. McNett*, 2013-Ohio-5099.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,            :        APPEAL NO. C-120824
                                   TRIAL NO. 12TRC-12615A

     Plaintiff-Appellant,        :

  vs.                           :        *O P I N I O N.*

RACHEL MCNETT,          :

     Defendant-Appellee.      :


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: November 20, 2013


*John Curp*, City Solicitor, *Charles Rubenstein*, City Prosecutor, and *Christopher Liu*, Assistant City Prosecutor, for Plaintiff-Appellant,

*R. Shane Herzner*, for Defendant-Appellee.


Please note: this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1}   Plaintiff-appellant the city of Cincinnati appeals the trial court's judgment suppressing the result of defendant-appellee Rachel McNett's breath-alcohol test.   Because this court has concluded in *State v. McMahon*, 1st Dist. Hamilton No. C-120728, 2013-Ohio-2557, that the Director of the Ohio Department of Health has set forth the qualifications for operators of the Intoxilyzer 8000 in the Ohio Administrative Code in accordance with R.C. 4511.19 and 3701.143; and because we conclude that the city has substantially complied with the three-year record keeping requirement in accordance with Ohio Adm.Code 3701-53-01(A)(1), we reverse the trial court's judgment, which had granted McNett's motion to suppress on those two grounds, and remand this cause for further proceedings in the trial court.

{¶2}   McNett was arrested on April 7, 2012, and taken to the Cincinnati District 2 police station where she gave a breath-alcohol sample, which was analyzed by the Intoxilyzer 8000 (OH-5) machine with serial number 4096 ("machine 4096"). Her breath sample yielded a result of .146 grams of alcohol per 210 liters of breath. McNett was cited for operating a vehicle under the influence of alcohol ("OVI") in violation of R.C. 4511.19(A)(1)(a), operating a vehicle with a prohibited concentration of alcohol on her breath in violation of R.C. 4511.19(A)(1)(d), and failing to operate her vehicle with her headlights on from dusk until dawn in violation of R.C. 4513.03.

{¶3}   She entered not guilty pleas to all the charges, and filed a motion to suppress the state's evidence against her.   In the motion, she challenged, among other things, the admissibility of her breath-alcohol test result. The trial court joined her case with defendants Eric Muchmore, Jeffrey Inman, and Bradley Clemente, whose breath tests had been administered on machine 4096, solely for the pretrial

determination of whether the state of Ohio had acted in substantial compliance with the Ohio Department of Health ("ODH") regulations pertaining to the Intoxilyzer 8000 machine. In support of the motion, McNett claimed, among other things, that her breath-test result should be suppressed because the ODH had failed to set forth in the Ohio Administrative Code the necessary qualifications for individuals to operate the Intoxilyzer 8000 in accordance with R.C. 3701.143 and 4511.19, and because the city had failed to comply with the three-year record keeping requirement set forth in Ohio Adm.Code 3701-53-01.

### Evidentiary Hearing on the Combined Motions to Suppress

{¶4} At an evidentiary hearing on the combined motions to suppress, the city presented testimony from Mary Martin, the program administrator for alcohol and drug testing at the ODH, Michael Quinn, an employee of the ODH who had performed the certification on machine 4096, and Cincinnati Police Officer Steven Fox, who maintains the log book of drug and alcohol test results at Cincinnati Police District 2, where McNett's breath test had been administered.

{¶5} Martin testified that the ODH has a standardized process for obtaining an operator access card for the Intoxilyzer 8000, which is set forth in Ohio Adm.Code 3701-53-01 et seq. In order to operate the Intoxilyzer 8000, an individual must fill out an application pursuant to Ohio Adm.Code 3701-53-09(D), and meet the qualifications for an operator's permit set forth in Ohio Adm.Code 3701-53-07(E). Once an individual satisfies those requirements, he or she is issued an operator access card. According to Martin, the access card is the "permit" issued to operators of the Intoxilyzer 8000. Martin further testified that the ODH keeps records of those individuals who have operator access cards, and that an individual's

3

failure to comply with the ODH requirements will result in the cancellation of his or her access card.

{¶6} Martin also testified about the procedure for breath tests. According to Martin, the subject test is the entire testing sequence by a person. It includes two breath samples. The lower of the two samples is the official breath-test result. She testified that at the conclusion of a breath test, the Intoxilyzer 8000 prints out a completed subject test report, which includes the two breath-sample results. The Intoxilyzer 8000, which is attached to the Law Enforcement Acquired Data System ("LEADS") line, however, also transmits the subject's test information along with other data collected by the machine during the testing process, in a read-only format to a state-wide database called COBRA.

{¶7} The ODH has devised a website, which is completely separate from the COBRA data, where the public can access some of the COBRA data via the internet. The data that can be accessed on the website is more comprehensive than the subject test report, and includes, among other things, sample attempts for each testing sequence. According to Martin, the ODH discovered that data from machine number 4096 had not been transmitted to the COBRA database for one week, December 15 - 22, 2011. When the lapse was brought to ODH's attention, ODH investigated and found there was a problem with its server.

{¶8} Machine 4096, however, had already been wiped clean, so ODH was unable to upload the missing data. As a result, ODH contacted Cincinnati Police District 2, where the machine was located, and obtained copies of the log book for the missing time period.

{¶9} Martin further testified that ODH is not required to maintain all the COBRA data, but that ODH's goal in maintaining the website is transparency.

She also testified that ODH no longer requires police departments to retain a log book for the Intoxilyzer 8000 (OH-5) machine, and that ODH's retention of the data is meant to fulfill the three-year record keeping requirement under Ohio Adm.Code 3701-53-01.

{¶10} Martin identified a subject test report printed from machine 4096 for McNett, a subject test report for McNett that had been printed from the ODH website, the access card information from the ODH's website for the officer who had conducted McNett's test, and a photocopy of the officer's access card information.

{¶11} Cincinnati Police Officer Steven Fox, the administrative officer in the traffic unit, testified that his job duties include ensuring that the city's paperwork complies with the ODH regulations for breath-alcohol testing. According to Fox, the Cincinnati Police Department maintains log books at each testing site where the arresting officer is responsible for entering various test data contemporaneously with an individual's arrest. Because the log book is a compilation of all the breath tests that are done at District 2, it contains the breath-alcohol test result along with the serial number for the Intoxilyer machine that is used.

{¶12} Officer Fox brought copies of parts of two different log books with him to the suppression hearing. He testified that the log book contains only the final test result. So if it takes mutiple attempts to administer the breath test, only the final result would be entered. He further testified that because the log book only contains the officer's observations, it does not contain all the other data that the machine collects during the testing phase and transmits to the ODH through the LEADS line.

{¶13} Officer Fox testified that ODH had informed him that it was missing a weeks' worth of data from December 2011. He checked the log book and discovered ten entries in the book that had not been transmitted to the ODH.

Officer Fox testified that he was unaware of any other results that had been logged in the police department log book that had not been reported on the ODH website.

{¶14} The trial court subsequently issued a single written decision, granting all four defendants' motions to suppress the results of their breath tests on the following two grounds: (1) the ODH had failed to set forth the qualifications for operators of the Intoxilyzer 8000 in the Ohio Adminstrative Code in accordance with R.C. 4511.19 and 3701.143; and (2) the city had failed to comply with the three-year record keeping requirement in accordance with Ohio Adm.Code 3701-53-01(A)(1). The city has timely appealed.

## Standard of Review

{¶15} When reviewing a trial court's ruling on a motion to suppress, we employ a two part analysis. First, we review the historical facts found by the trial court for clear error and give due weight to the inferences drawn from those facts by the trial court. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Secondly, we must independently decide whether the facts meet the applicable legal standard. *See State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶16} When an accused challenges the results of a breath test in a pretrial motion to suppress, the state has the burden of demonstrating that the test was administered in substantial compliance with the ODH regulations. *Id.* at ¶ 24. If the state establishes substantial compliance, then the burden shifts back to the accused to demonstrate that he was prejudiced by anything less than strict compliance. *Id.*

{¶17} The nature of the prosecution's burden to establish substantial compliance is determined by the degree of specificity with which the accused challenges the legality of the test. *State v. Johnson*, 137 Ohio App.3d 847, 851, 739 N.E.2d 1249

6

(10th Dist.2000). If the motion to suppress is general, the state is only required to demonstrate in general terms, that it substantially complied with the regulations. *Id.* at 851. Only when an accused raises a specific issue in his motion to suppress, is the state required to produce specific evidence. *Id.*

### Qualifications for Obtaining an Intoxilyzer 8000 Access Card

{¶18}   In its first assignment of error, the city argues the trial court erred in suppressing the results of McNett's breath test on the basis that the director of health had failed to comply with the mandatory requirements in R.C. 4511.19 and 3701.143 to promulgate standards in the Ohio Administrative Code for the issuance of access cards to operators of the Intoxilyzer 8000. We agree.

{¶19}   In *State v. McMahon,* 1st Dist. Hamilton No. C-120728, 2013-Ohio-2557, ¶ 11-14 this court reversed the judgment of the trial court, which had relied upon the same reasoning employed by the trial court in this case, in suppressing the defendant's breath-alcohol test result. In *McMahon*, Martin had likewise testified that it was the ODH's position that the access card was the type of permit issued to an operator of the Intoxilyzer 8000 machine. *Id.* at ¶ 11. We held that the ODH's "position that the access card, which is referenced in Ohio Adm.Code 3701-53-09(D), is the type of permit that is issued to an operator of an Intoxilyzer 8000 under Ohio Adm.Code 3701-53-07(E) comports with R.C. 3701.143, which authorizes the director of health to issue permits to qualified persons, but does not reference the issuance of access cards." *Id.* at ¶ 13.

{¶20}   We further held that when the relevant administrative code provisions were read together, they supported the ODH's interpretation. *Id.* at ¶ 14. We looked specifically to Ohio Adm.Code 3701-53-09 and 3701-53-07. *Id.* We noted that under Ohio Adm.Code 3701-53-09(D), "individuals qualified to use the

Intoxilyzer 8000 machine are referred to as operators, and that the provision provided such operators shall be issued access cards to perform breath tests." *Id.* We further acknowledged that "Ohio Adm.Code 3701-53-07 provides qualifications for the issuance of either operator permits or senior operator permits; it categorizes the issuance of permits into these two groups, rather than by the type of machine being operated." *Id.* We stated that "because users of the Intoxilyzer 8000 machine are operators, reason dictates that they would be issued, if the required qualifications are met, operator permits under Ohio Adm.Code 3701-53-07(E)." *Id.* We, therefore, concluded that "it [wa]s a reasonable interpretation of these provisions that the access card referenced in Ohio Adm.Code 3701-53-09(D) is the type of permit issued to an operator of an Intoxilyzer 8000 machine under Ohio Adm.Code 3701-53-07(E)." *Id.*

{¶21} Based upon our decision in *McMahon*, we hold that trial court erred in granting McNett's motion to suppress on the basis that the ODH had failed to set forth the requirements for obtaining an operator access card in the Ohio Administrative Code.[1] We, therefore, sustain the city's first assignment of error.

### Three-Year Record Keeping Requirement

{¶22} In its second assignment of error, the city argues that the trial court erred in suppressing McNett's breath-test result on the basis that the city had failed

---

[1] Ohio Adm.Code 3701-53-09(D) has been amended since McNett filed her motion to suppress. As amended July 25, 2013, it now reads: "Individuals desiring to function as operators using instruments listed under paragraph (A)(3) of rule 3701-53-02 of the Administrative Code shall apply to the director of health for a permit, which shall be in the form of an operator access card, on forms prescribed and provided by the director of health. The director of health shall issue a permit which shall be in the form of an operator access card, to perform tests to determine the amount of alcohol in a person's breath to individuals who qualify under the applicable provisions, including but not limited to, paragraph (D) and/or (E) of rule *3701-53-07 of the Administrative Code.*" The underlined language was added by the amendment.

to demonstrate substantial compliance with the three-year record retention requirement in Ohio Adm.Code 3701-53-01(A)(1).

{¶23} The trial court held that the city had failed to substantially comply with ODH regulations regarding record keeping because the COBRA data for machine 4096 had been wiped out for one week in December 2011. The trial court held that five percent of the records for machine 4096 were missing from the ODH central data repository.

{¶24} The trial court noted that Martin had testified that the failure most likely occurred at the server level and not at the operator or machine level, but that it was possible that the machine's memory had been full and had overridden the data. She testified, however, that it was more likely that the machine properly uploaded and streamed the data, but that the ODH server had been turned off. Martin likened the situation to making a phone call where the recipient's phone is dead.

{¶25} The trial court acknowledged that Officer Fox had testified that the Cincinnati Police Department had kept a manual log, which showed that ten individuals had submitted to a breath test during this time frame, and it showed the test results for those ten individuals, for which ODH had no record. Officer Fox testified that in addition to the tests manually logged in by Cincinnati arresting officers, there was a possibility that Ohio state troopers had made OVI arrests, and that their Intoxilyzer 8000 tests may not have been logged in to the Cincinnati police log.

{¶26} The trial court was concerned that the Cincinnati police only recorded the final test in their log. As a result, the log did not show the failed testing attempts, or provide the higher sample test result or any of other details provided in the COBRA data. The trial court held that the Cincinnati police log book could not serve

9

as a substitute for data which the ODH was mandated to maintain. Consequently, the trial court concluded that the state had not substantially complied with the ODH regulations to maintain records from machine 4096 for three years.

{¶27} The city argues that the trial court erred in suppressing the breath test results on this basis because, as expressed in Ohio Adm.Code 3701-53-01(A), the only data it must retain is the test result.

{¶28} Ohio Adm.Code 3701-53-02(A) provides that

[i]nstruments listed in this paragraph are approved as evidential breath testing instruments for use in determining whether a person's breath contains a concentration of alcohol prohibited or defined by sections 4511.19 and/or 1547.11 of the Revised Code, or any other equivalent statute or local ordinance prescribing a defined or prohibited breath-alcohol concentration. The approved evidential breath testing instruments are:

* * *

(3) Intoxilyzer model 8000 (OH-5).

{¶29} Subsection (E) further provides that "breath samples using the instrument listed under paragraph (A)(3) of this rule [Intoxilyzer 8000 OH-5], shall be analyzed according to the instrument display for the instrument used. Results of subject tests shall be retained in accordance with paragraph (A) of rule 3701-53-01 of the Administrative Code."

{¶30} Ohio Adm.Code 3701-53-01(A) provides as follows:

Tests to determine the concentration of alcohol may be applied to blood, breath, urine, or other bodily substances. Results shall be expressed as equivalent to:

* * *

(2) Grams by weight of alcohol per two hundred ten liters of deep lung breath;

* * *

The results of the tests shall be retained for not less than three years.

{¶31}   The regulations state that the "results" of the tests shall be retained. The question then becomes what is the "result" of a test under the Intoxilyzer 8000. Recognizing that the phrase "results of the tests" is not defined in the administrative code, Ohio courts have employed the plain meaning of the terms. *State v. Markin*, 149 Ohio App.3d 274, 2002-Ohio-4326, 776 N.E.2d 1163, ¶ 41-47 (10th. Dist.). Although a test under the Intoxilyzer 8000 (OH-5) includes two breath samples, testimony at the suppression hearing revealed that the result of the test is the lowest number for the breath sample that an individual provides during the test.

{¶32}   Because the "result" is the lower value that the state will adduce at trial to prove the OVI offense, it is the "result" contemplated in Ohio Adm.Code. 3701-53-01(A).   As a result, the trial court's concern that the log book could not serve as a substitute for the missing ODH data was misplaced.  The state's failure to retain the higher of the two breath samples and all the other COBRA data would not result in a violation of the administrative regulation, because the state is not required to retain this data as part of its record keeping requirements under the administrative regulation.  Because the log book contains the results of the tests conducted on the Intoxilyzer 8000 machine for the week in December 2011, it is sufficient to show that the state substantially complied with the record keeping requirement in Ohio Adm.Code  3701-53-01(A).

**{¶33}** Furthermore, the trial court's speculation that other tests may have been given and the results of those tests may have not been recorded, was insufficient to rebut the state's showing of substantial compliance through Officer Fox's testimony and his production of the ten test results that were missing from the ODH's website. *See, e.g.*, *City of Columbus v. Morrison*, 10th Dist. Franklin No. 08AP-311, 2008-Ohio-5257, ¶ 12 and fn.1.

**{¶34}** The Ohio Supreme Court has held, moreover, that rigid compliance with the ODH regulations in regard to alcohol testing is not necessary in order for test results to be admissible. *State v. Plummer*, 22 Ohio St.3d 292, 490 N.E.2d 902 (1986). Although the better course may be to retain all the data associated with a breath test, the ODH regulations require only that the results of breath tests that are administered be retained.

**{¶35}** McNett, furthermore, has not demonstrated at this stage that the ODH's failure to retain the COBRA data associated with these ten test results compromised the accuracy or the evidentiary value of her own breath-test result. Her test result was not lost and McNett cannot demonstrate a causal relationship between others' test results and her own test result at this stage of the proceedings. We, therefore, sustain the city's second assignment of error.

**{¶36}** Having found both of the city's assignments of error meritorious, we reverse the trial court's judgment, and remand this cause for further proceedings in the trial court.

Judgment reversed and cause remanded.

**DINKELACKER, P.J,** and **DEWINE, J.,** concur.

Please note:
The court has recorded its own entry this date.