[Cite as *State v. Moore*, 2013-Ohio-5506.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

STATE OF OHIO,                                   :

    Plaintiff-Appellant,                    :       Case No.   12CA26

    vs.                                          :

ANTONIO MOORE,                           :       DECISION AND JUDGMENT ENTRY

    Defendant-Appellee.                   :

_____

APPEARANCES:

COUNSEL FOR APPELLANTS:        Patrick J. Lang, Athens City Law Director, and Tracy W.
                                        Meek, Athens City Prosecutor, Athens, Ohio 45701

COUNSEL FOR APPELLEES:          Jon J. Saia, Saia & Piatt, Inc., 713 South Front Street,
                                          Columbus, Ohio 43206

_____

CRIMINAL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 12-11-13
ABELE, J.

{¶ 1}   This is an appeal from an Athens County Municipal Court judgment that granted a

motion to suppress evidence filed by Antonio Moore, defendant below and appellee herein.

{¶ 2}   The City of Athens, plaintiff below and appellant herein, assigns the following

error for review:

> "THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S
> MOTION TO SUPPRESS FINDING THAT THE ODH
> DIRECTOR HAS FAILED TO COMPLY WITH THE
> REQUIREMENTS OF R.C. 3701.143 AND, PURSUANT TO
> STATE V. RIPPLE, [70 Ohio St.3d 86, 637 N.E.2d 304 (1994)]
> SUCH LACK OF COMPLIANCE REQUIRES EXCLUSION OF
> INTOXILYZER RESULTS IN ANY 4511.19 PROSECUTION."

{¶ 3} Appellee received a citation for operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a), and operating a motor vehicle with a prohibited concentration of alcohol in his breath in violation of R.C. 4511.19(A)(1)(d).[1] Appellee subsequently filed a motion to suppress the Intoxilyzer 8000 breath test results. Appellee argued that the results are inadmissible because the Ohio Director of Health (ODH) failed to set forth rules regarding the qualifications for personnel using the Intoxilyzer 8000. Appellee agreed that the officer who administered the test possessed an "operator access card," but asserted that none of the ODH regulations set forth the qualifications to obtain an operator access card. Appellee contended that because the ODH failed to promulgate any rules regarding personnel qualifications for the Intoxilyzer 8000, the ODH did not comply with R.C. 3107.143 and, consequently, test results are inadmissible under R.C. 4511.19(D)(1)(b).

{¶ 4} The trial court agreed with appellee that the ODH failed to promulgate any rules to ascertain whether an individual qualifies to operate the Intoxilyzer 8000. The court explained: "As the rules are written, there are no standards as to the occupation, education, or proficiency for an individual to obtain or retain an operator access card [for the Intoxilyzer 8000]." The court thus concluded that the ODH failed to comply with R.C. 3701.143 and, thus, that the officer did not possess a valid permit. The court determined that because the officer did not possess a valid permit, the Intoxilyzer 8000 test results are inadmissible pursuant to R.C. 4511.19(D)(1)(b). This appeal followed.

{¶ 5} In its sole assignment of error, the appellant argues that the trial court erred by

---

[1] A copy of the citation was not included in the record. The parties do not, however, dispute that appellant was charged with violating R.C. 4511.19(A)(1)(a) and (d).

granting appellee's motion to suppress evidence.   Appellant contends that the trial court wrongly

ruled that the Intoxilyzer 8000 test results are inadmissible under R.C. 4511.19(D)(1)(b) due to

the officer's lack of a valid permit.   Appellant asserts that the trial court incorrectly determined

that the ODH regulations fail to set forth any qualifications for individuals who desire to

administer the Intoxilyzer 8000 and, thus, that the officer's permit is not valid.   Appellant asserts

that Ohio Admin.Code 3701-53-07(E) sets forth the qualifications for an individual who desires

to administer the Intoxilyzer 8000.

{¶ 6}   Appellee contends that the Intoxilyzer 8000 results are inadmissible under R.C.

4511.19(D)(1)(b) because the ODH has not issued a valid permit to the officer who performed

the breath test.   Appellee recognizes that the officer possessed an operator access card.

Appellee asserts, however, that the operator access card is not a valid permit issued under R.C.

3701.143.   Appellee argues that the permit is not valid under R.C. 3701.143 because the ODH

failed to set forth any method to ascertain whether an individual qualifies for an operator access

card.

A

STANDARD OF REVIEW

{¶ 7}   Appellate review of a trial court's ruling on a motion to suppress presents a mixed

question of law and fact.   We must accept a trial court's findings of fact if competent and

credible evidence supports the findings.   We, however, review de novo the trial court's

application of the relevant law to those facts. State v. Burnside, 100 Ohio St.3d 152,

2003–Ohio–5372, 797 N.E.2d 71, ¶8.

{¶ 8}   In the case at bar, the parties do not dispute the facts.   Instead, they dispute

whether the ODH has promulgated any regulations governing the qualifications for individuals who desire to administer the Intoxilyzer 8000. This is a question that involves the interpretation of an administrative rule, which is a question of law. Minges v. Ohio Dept. Of Agriculture, — Ohio App.3d —, 2013-Ohio-1808, 990 N.E.2d 662, ¶13; Cincinnati v. Nicholson, 1st Dist. Hamilton No. C-120332, 2013-Ohio-708, ¶8.

B

ADMINISTRATIVE RULE INTERPRETATION

{¶ 9}   Courts interpret administrative rules in the same manner as statutes. McFee v. Nursing Care Mgt. of Am., Inc., 126 Ohio St.3d 183, 2010-Ohio-2744, 931 N.E.2d 1069, ¶27, citing State ex rel. Brilliant Elec. Sign Co. v. Indus. Comm., 57 Ohio St.2d 51, 54, 386 N.E.2d 1107 (1979) (stating that the "ordinary meaning rule" of statutory construction applies equally to administrative rules). The primary goal in construing an administrative rule is to ascertain and give effect to the intent of the rule-making authority. State v. Hairston, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶11. The rule-making authority's intent "'is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation.'" State ex rel. Cordray v. Midway Motor Sales, Inc., 122 Ohio St.3d 234, 2009-Ohio-2610, 910 N.E.2d 432, ¶15, quoting Slingluff v. Weaver, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. Thus, when interpreting an administrative rule, courts first look to text of the rule, "'reading words and phrases in context and construing them according to the rules of grammar and common usage.'" State v. Willan, — Ohio St.3d —, 2013-Ohio-2405, — N.E.2d —, ¶5, quoting State ex rel. Steele v. Morrissey, 103 Ohio St.3d

355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶21; accord Sugarcreek Twp. v. Centerville, 133 Ohio

St.3d 467, 2012-Ohio-4649, 979 N.E.2d 261, ¶19.   If the language is plain and unambiguous,

courts must apply it as written.   Willan at ¶5, citing Hairston at ¶13.   "'The interpretation of

statutes and administrative rules should follow the principle that neither is to be construed in any

way other than as the words demand.'" State ex rel. Baroni v. Colletti, 130 Ohio St.3d 208,

2011-Ohio-5351, 957 N.E.2d 13, ¶18, quoting Morning View Care Ctr.-Fulton v. Ohio Dept. of

Human Servs., 148 Ohio App.3d 518, 2002-Ohio-2878, 774 N.E.2d 300, ¶36 (10th Dist.).

{¶ 10} Moreover, related provisions must be read in pari materia.   Midway Motor Sales,

supra, at ¶25, citing Maxfield v. Brooks, 110 Ohio St. 566, 144 N.E. 725, (1924) paragraph two

of the syllabus.   In reading statutes and administrative rules in pari materia, "court[s] must give a

reasonable construction that provides the proper effect to each."   Id., citing Maxfield.   "All

provisions * * * bearing upon the same subject matter should be construed harmoniously unless

they are irreconcilable."   Id., citing Couts v. Rose, 152 Ohio St. 458, 461, 90 N.E.2d 139 (1950);

accord Chesapeake Exploration, L.L.C. v. Oil & Gas Comm., 135 Ohio St.3d 204,

2013-Ohio-224, 985 N.E.2d 480, ¶14.

{¶ 11} Before we examine the relevant administrative rules, we first set forth the

provisions of the Revised Code that authorize the ODH to promulgate rules regarding

breath-alcohol tests.

C

R.C. 4511.19(D)(1)(b)

{¶ 12} Through the enactment of R.C. 4511.19(D)(1)(b), the Ohio General Assembly has

empowered the ODH to determine the appropriate means and methods for analyzing an

individual's breath-alcohol concentration.   R.C. 4511.19(D)(1)(b) states that evidence on the concentration of alcohol in an individual's breath may be admitted into evidence at trial if it has been "analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code."   Thus, R.C. 4511.19(D)(1)(b) sets forth two basic statutory requirements for evidence regarding the concentration of alcohol in a defendant's breath to be admissible: (1) the ODH has approved the testing method; and (2) the individual who analyzed the concentration possesses a valid permit that the ODH issued under R.C. 3701.143.   Our focus in the case at bar is on the second requirement–whether the officer possessed a valid permit that the ODH issued under R.C. 3701.143.

## D

## R.C. 3701.143

{¶ 13}  R.C. 3701.143 gives the ODH the authority to determine techniques or methods for chemically analyzing a person's breath in order to ascertain the amount of alcohol in the person's breath.   The statute requires the ODH to (1) "approve satisfactory techniques or methods, [2] ascertain the qualifications of individuals to conduct such analyses, and [3] issue permits to qualified persons authorizing them to perform such analyses."

## E

## ODH REGULATIONS

{¶ 14}  Ohio Admin.Code 3701-53-02(A) sets forth the instruments "approved as evidential breath testing instruments for use in determining whether a person's breath contains a

concentration of alcohol prohibited or defined by sections 4511.19 * * *." The "Intoxilyzer model 8000 (OH-5)" is one of the approved evidential breath testing instruments. Ohio Admin.Code 3701-53-02(A)(3). Thus, the ODH has approved the Intoxilyzer 8000 as a satisfactory technique or method for chemically analyzing a person's breath in order to ascertain the amount of alcohol in the person's breath, as R.C. 3701.143 requires.

{¶ 15} Ohio Admin.Code 3701-53-07, entitled "Qualifications of personnel," discusses persons who are qualified to perform analyses. Ohio Admin.Code 3701-53-07(C) requires a "senior operator" or an "operator" to perform "[b]reath tests used to determine whether a person's breath contains a concentration of alcohol prohibited or defined by sections 4511.19 * * *." Thus, because the Intoxilyzer 8000 is a "[b]reath test[] used to determine whether a person's breath contains a concentration of alcohol prohibited or defined by sections 4511.19," an "operator" is qualified to administer the Intoxilyzer 8000.

{¶ 16} The rule states that an individual qualifies for an "operator's permit" by:

(1) Being a high school graduate or having passed the "General Education Development Test";

(2) Being a certified law enforcement officer sworn to enforce sections 4511.19 and/or 1547.11 of the Revised Code, or any other equivalent statute or local ordinance prescribing a defined or prohibited breath alcohol concentration, or a certified corrections officer, and;

(3) Having demonstrated that he or she can properly operate the evidential breath testing instrument by having successfully completed a basic operator or conversion training course for the type of approved evidential breath testing instrument for which he or she seeks a permit.

{¶ 17} The next logical conclusion is that an "operator" must possess an "operator's

permit" to perform a breath test, which, as we indicated, includes the Intoxilyzer 8000.   As Ohio Admin.Code 3701-53-07(C) states, a breath-alcohol concentration test "shall be performed by a senior operator or an operator."

{¶ 18}  Appellee, however, asserts that this is not a logical conclusion because the rules regarding the Intoxilyzer 8000 do not explicitly state that an individual who desires to operate the Intoxilyzer 8000 must apply for an "operator's permit."   Appellee instead contends that the regulations require an individual who desires to operate the Intoxilyzer 8000 to apply for an "operator access card."   Appellee maintains that an "operator access card" is an entirely different type of authorization than an "operator's permit."   In support of its argument, appellee refers to the following language in Ohio Admin.Code 3701-53-09(D):

> Individuals desiring to function as operators using [the Intoxilyzer 8000] shall apply to the director of health for operator access cards on forms prescribed and provided by the director of health.   The director of health shall issue operator access cards to perform tests to determine the amount of alcohol in a person's breath to individuals who qualify under the applicable provisions of rule 3701-53-07 of the Administrative Code. * * * *

Appellee notes that Ohio Admin.Code 3701-53-09(D) states that an individual who desires to operate the Intoxilyzer 8000 must apply for an "operator access card."   Appellee contends that the rules do not contain any regulations regarding the qualifications of an individual to obtain an "operator access card" and that the qualifications for obtaining an "operator's permit" are not the same for obtaining an "operator access card."

{¶ 19}  We believe that a plain, common sense reading of the rules in pari materia lead to the conclusion that an "operator access card" is, in essence, the same as an "operator's permit." First, the rules state that an individual who desires to administer the Intoxilyzer 8000 must be an

"operator."   Ohio Admin.Code 3701-53-07(C).   The rules then set forth the requirements for

obtaining an operator's permit.   Because an individual who desires to operate the Intoxilyzer

8000 must be an "operator," it necessarily follows that the individual must obtain and qualify for

an "operator's permit."   Ohio Admin.Code 3701-53-09(D) specifically refers to "[i]ndividuals

desiring to function as operators."   Because this provisions refers to those individuals as

"operators," then the "applicable provisions" would be those set forth in Ohio Admin.Code

3701-53-07(E) regarding "operators."   This leads to a logical conclusion that an individual who

desires to use the Intoxilyzer 8000, an "operator," must qualify for an "operator's permit."   The

rule's use of "operator access card" instead of "operator permit" does not change our analysis.

Both are types of "operators" and the rules contain regulations regarding the qualifications of an

"operator."   Simply because the rules do not have a specific provision that explicitly states "here

are the qualifications for an operator access card" does not mean such a provision is absent.

Instead, reading the rules in pari materia shows that the rules do indeed contain provisions

regarding the qualification for an operator access card.   As we explained, reading the rules in

conjunction indicates that the qualifications for an operator access card are the same as the

qualifications for an operator's permit.

{¶ 20} Moreover, as the trial court recognized, an operator access card is a "permit."

Black's Law Dictionary defines a "permit" as follows: "In general, any document which grants a

person the right to do something.   A license or grant of authority to do a thing. * * * *"   Id. at

1140.   Ohio Admin.Code 3701-53-09(D) indicates that a person who applies for an operator

access card is requesting the ODH to issue a document granting the individual authority to

administer an Intoxilyzer 8000 breath test.   An operator access card thus meets the definition of

a permit.

{¶ 21} If we read Ohio Admin.Code 3701-53-09(D) with this understanding, the rule would state:

> Individuals desiring to function as operators using [the Intoxilyzer 8000] shall apply to the director of health for operator [permits] on forms prescribed and provided by the director of health.  The director of health shall issue operator [permits] to perform tests to determine the amount of alcohol in a person's breath to individuals who qualify under the applicable provisions of rule 3701-53-07 of the Administrative Code. * * * *

{¶ 22} Although the trial court did not believe that the phrase "the applicable provisions of rule 3701-53-07 of the Administrative Code" referred to any particular provision in Ohio Admin.Code 3701-53-07, we think it logically leads to Ohio Admin.Code 3701-53-07(E), which sets forth the qualifications for an "operator's permit."   Ohio Admin.Code 3701-53-09(D) specifically refers to an individual who desires to use the Intoxilyzer 8000 and meets the relevant qualifications as an "operator."   The relevant qualifications for an "operator" are described in Ohio Admin.Code 3701-53-07(E).

{¶ 23} Additionally, Ohio Admin.Code 3701-53-07(C) states that breath tests must be performed by an operator or a senior operator.   Although the rule does not mention an operator who has been issued an operator access card, it is illogical to conclude that an individual who has been issued an "operator" access card is not an "operator" within the meaning of Ohio Admin.Code 3701-53-07(E).

{¶ 24} Furthermore, our interpretation comports with the recent amendment to Ohio Admin.Code 3701-53-09(D) that explicitly adds the word "permit."   As appellee observes in his notice of supplemental authority, Ohio Admin.Code 3701-53-09(D) was amended, effective July

25, 2013, to read:

> Individuals desiring to function as operators using [the Intoxilyzer 8000] shall apply to the director of health for a permit, which shall be in the form of an operator access card, on forms prescribed and provided by the director of health. The director of health shall issue a permit, which shall be in the form of an operator access card, to perform tests to determine the amount of alcohol in a person's breath to individuals who qualify under the applicable provisions, including but not limited to, paragraph (D) and/or (E) of rule 3701-53-07 of the Administrative Code.

While appellee suggests that the reason for the amendment is that the ODH realized its failure to promulgate any rules regarding the qualifications for individuals desiring to administer the Intoxilyzer 8000, we think it is just as likely, if not more so, that the ODH amended the rule to clarify the rule and to put an end to litigation that questions whether an "operator access card" is the same as an "operator's permit."

{¶ 25} Recently, the First District Court of Appeals reached the same conclusion. State v. McMahon, 1st Dist. Hamilton No. C-120728, 2013-Ohio-2557. In McMahon, the city appealed the trial court's decision that granted the defendant's motion to suppress the Intoxilyzer 8000 results. The trial court, like the trial court in the case sub judice, suppressed the results of the defendants's breath test after it determined that the ODH had not promulgated rules for obtaining the access card required to operate the Intoxilyzer 8000. The trial court determined that

> "although an operator of the Intoxilyzer 8000 machine was required to have an operator access card, the director had only promulgated qualifications for the issuance of permits, and not access cards. Under the trial court's analysis, no person could become qualified to operate the Intoxilyzer 8000, and any breath test taken on that machine would be inadmissible in a prosecution under R.C. 4511.19."

Id. at *1 (no paragraph numbers provided in the opinion).

{¶ 26} The appellate court observed, however, that the ODH's program administrator for

alcohol and drug testing testified at the suppression hearing regarding the issuance of access

cards.   The court summarized her testimony as follows:

> "According to [Mary] Martin, an individual desiring to operate the
> Intoxilyzer 8000 must first fill out an application pursuant to Ohio Adm.Code
> 3701–53–09(D).   The individual must then meet the qualifications listed above
> and found in Ohio Adm.Code 3701–53–07(E).   According to Martin, an access
> card is the type of permit that is issued to an operator of the Intoxilyzer 8000."

Id. at *3.

{¶ 27} The appellate court deferred to Martin's explanation that an access card is the type

of permit issued to an operator of an Intoxilyzer 8000 machine.   The court explained:

> "When a statue is silent or ambiguous with respect to an issue, a court
> must give deference to an agency's interpretation of its own regulations if the
> interpretation is reasonable.   Wells Fargo Bank, N.A. v. Isaacs, 1st Dist. No.
> C–100111, 2010–Ohio–5811, ¶9–10, citing Chevron U.S.A., Inc. v. Natural
> Resources Defense Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d
> 694 (1984).   Here, the department of health's position that an access card is the
> type of permit that is issued to an operator of an Intoxilyzer 8000 under Ohio
> Adm.Code 3701–53–07(E) comports with R.C. 3701.143, which authorizes the
> director of health to issue permits to qualified persons, but does not reference the
> issuance of access cards.
>      And the relevant administrative code provisions, when read in
> conjunction, support the department of health's interpretation.   Ohio Adm.Code
> 3701–53–09(D) indicates that individuals qualified to use the Intoxilyzer 8000
> machine are referred to as operators, and that such operators shall be issued access
> cards to perform breath tests.   Ohio Adm.Code 3701–53–07 provides
> qualifications for the issuance of either operator permits or senior operator
> permits; it categorizes the issuance of permits into these two groups, rather than
> by the type of machine being operated.   Since users of the Intoxilyzer 8000
> machine are operators, reason dictates that they would be issued, if the required
> qualifications are met, operator permits under Ohio Adm.Code 3701–53–07(E).
> It is a reasonable interpretation of these provisions that the access card referenced
> in Ohio Adm.Code 3701–53–09(D) is the type of permit issued to an operator of
> an Intoxilyzer 8000 machine under Ohio Adm.Code 3701–53–07(E).
>      This interpretation prevents the severe and unreasonable effect that would
> result from the trial court's ruling, which would be the exclusion of any breath test

administered on an Intoxilyzer 8000 machine. And it gives effect to the intent of the legislature and the department of health, namely, to have qualified operators of the Intoxilyzer 8000 be issued access cards so that they may conduct breath tests on the machine, and to have the results of those tests be admissible in a prosecution under R.C. 4511.19."

Id. at *3-4.

{¶ 28} The McMahon court thus determined that the ODH "promulgated the necessary requirements for an operator of the Intoxilyzer 8000 to be issued the access card required to use that machine." Id. at *4. The court therefore reversed the trial court's decision granting the defendant's motion to suppress.

{¶ 29} Our decision comports with the McMahon court's analysis. We likewise conclude that the ODH promulgated rules regarding the qualifications of individuals desiring to operate the Intoxilyzer 8000. Those rules are set forth in Ohio Admin.Code 3701-53-07(C) and (E), and 3701-53-09(D). Consequently, we believe that because the ODH promulgated rules regarding the qualifications of individuals that desire to operate the Intoxilyzer 8000, the trial court erred by determining that the ODH failed to comply with R.C. 3701.143 and that the test results are therefore inadmissible pursuant to R.C. 4511.19(D)(1)(b). The trial court thus erred by granting appellee's motion to suppress the results of the Intoxilyzer 800.

{¶ 30} Although the state asserts that the trial court wrongly relied upon Ripple, supra, we find that issue is moot in light of our decision that reverse the trial court's judgment. We therefore do not address it.

{¶ 31} Accordingly, based upon the foregoing reasons, we hereby sustain the state's assignment of error and reverse the trial court's judgment.

JUDGMENT REVERSED AND
CAUSE REMANDED FOR
FURTHER PROCEEDINGS
CONSISTENT WITH THIS
OPINION.

McFarland, P.J., dissenting:

{¶ 32}I respectfully dissent and agree with the well-reasoned decision of the trial court.

At the time the trial court considered this matter it appears that there was no language in

Ohio Adm.Code 3701-53 referencing "operator access code standards".   As such, this omission

in the applicable standards and/or qualifications for the issuance and retention of individuals

seeking an "operator access card" is dispositive. It is also interesting to note the legislature

amended Ohio Adm.Code 3701-53-09 (D) to address the qualifications for an operator access

card which was effective July 25, 2013. As the Appellee aptly points out, there would be no need

to amend the rules if there were, in fact, regulations for qualifications for obtaining an "operator

access card" prior to the amendment.

{¶ 33}In my view, because the requirements of R.C. 3701.143 have not been complied

with and in conjunction with reasoning of State v. Ripple, *supra*, I would affirm the trial court's

decision.

## JUDGMENT ENTRY

It is ordered that the judgment be reversed and cause remanded for further proceedings consistent with this opinion.   Appellant shall recover of appellee the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Municipal Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted.   The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court.   The stay as herein continued will terminate at the expiration of the sixty day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court.   Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J.: Concurs in Judgment & Opinion
McFarland, P.J.: Dissents with Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.