[Cite as *State v. Nash*, 2014-Ohio-129.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-120864 |
| | | TRIAL NO. 12TRC-25999B |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| ALANA NASH, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  January 17, 2014

*John P. Curp*, City Solicitor, *Charles Rubenstein*, City Prosecutor, and *Lauren M. Yanovsky*, Assistant City Prosecutor, for Plaintiff-Appellant,

*Office of the Hamilton County Public Defender* and *Josh Thompson,* for Defendant-Appellee.

Please note:  this case has been removed from the accelerated calendar.

**DINKELACKER, Presiding Judge.**

{¶1}    Plaintiff-appellant the city of Cincinnati appeals the trial court's decision suppressing the result of defendant-appellee Alana Nash's breath-alcohol test.  Because we hold that the city substantially complied with the Ohio Department of Health ("ODH") regulations regarding breath-alcohol testing, we reverse the trial court's judgment.

{¶2}    On May 30, 2012, Nash was arrested and charged with operating a motor vehicle while under the influence of alcohol in violation of  R.C. 4511.19(A)(1)(a), operating a motor vehicle with a prohibited breath-alcohol content in violation of former R.C. 4511.19(A)(1)(h), and possession of an open container of intoxicating liquid under R.C. 4301.62.  She submitted to a breath-alcohol test on an Intoxilyzer 8000, which yielded a result of .213 grams by weight of alcohol per 210 liters of breath.

{¶3}    Nash subsequently filed a motion to suppress the result of the breath-alcohol test on a number of grounds.  At an evidentiary hearing, the city presented the testimony of Mary Martin, the program administrator for alcohol and drug testing at ODH, who testified about the regulations and procedures related to the Intoxilyzer 8000.  The trial court found that ODH had not established procedures for issuing permits for Intoxilyzer 8000 operators, as required by R.C. 4511.19 and 3701.143.  Therefore, it granted Nash's motion to suppress.  The city has filed a timely appeal under R.C. 2945.67(A) and Crim.R. 12(K) from the trial court's judgment.

{¶4}    The city presents two assignments of error for review, which we address out of order.  In its second assignment of error, the city contends that the trial court erred in granting Nash's motion to suppress the breath-alcohol test on the

basis that ODH had failed to promulgate the necessary qualifications for operators of the Intoxilyzer 8000. It argues that ODH has established a procedure and requirements for obtaining a permit to use the Intoxilyzer 8000. This assignment of error is well taken.

{¶5} Appellate review of a motion to suppress presents a mixed question of law and fact. We must accept the trial court's findings of fact as true if competent, credible evidence supports them. But we must independently determine whether the facts satisfy the applicable legal standard. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Ojile*, 1st Dist. Hamilton Nos. C-110677 and C-100678, 2012-Ohio-6015, ¶ 61.

{¶6} When a defendant challenges the admission of a breath-alcohol test, courts apply a burden shifting analysis. The state must show substantial compliance with ODH regulations, and if the state meets that burden, a rebuttable presumption arises that the test results are admissible. *Burnside* at ¶ 24; *State v. Muchmore*, 1st Dist. Hamilton No. C-120830, 2013-Ohio-5100, ¶ 16. Then, the burden shifts back to the defendant to show that he was prejudiced by anything less than strict compliance. *Burnside* at ¶ 24; *Muchmore* at ¶ 16.

{¶7} In *State v. McMahon*, 1st Dist. Hamilton No. C-120728, 2013-Ohio-2557, this court reversed the trial court's judgment which had relied upon the same reasoning employed by the trial court in this case in suppressing the defendant's breath-alcohol test results. In *McMahon*, as in this case, Martin had testified that ODH had a standardized process for obtaining an operator access card for the Intoxilyzer 8000 as provided for in Ohio Adm.Code 3701-53-07 and 3701-53-09. ODH had taken the position that the access card was the permit issued to an operator of the Intoxilyzer 8000. *Id.* at ¶ 11.

{¶8}   We stated, "After a detailed review of the relevant statutes, we find that the department of health has promulgated the necessary qualifications for the issuance of an operator access card." *Id.* at ¶ 13.  We added, "We are persuaded by Martin's testimony espousing the department of health's position that the access card is the type of permit issued to an operator of an Intoxilyzer 8000 machine." *Id.* We further held that when the relevant administrative code provisions were read together, they supported the ODH's interpretation. *Id.* at ¶ 14.

{¶9}   Based on our decision in *McMahon*, we hold that the city substantially complied with the applicable statutes and ODH regulations, and that Nash has failed to show any prejudice from any lack of strict compliance.  The trial court erred in granting Nash's motion to suppress on the basis that ODH had failed to set forth the requirements for obtaining an operator access card. *See Muchmore*, 2013-Ohio-5100, at ¶ 18-21; *State v. McNett*, 1st Dist. Hamilton No. C-120824, 2013-Ohio-5099, ¶ 18-21.  We, therefore, sustain the city's second assignment of error.

{¶10}   In its first assignment of error, the city contends that the trial court erred in granting Nash's motion to suppress the breath-alcohol test.  It argues that her motion to suppress did not contain any factual allegations and, therefore, its burden of proof to show substantial compliance with the Ohio Department of Health regulations was "slight."  We have already held that the trial court erred in granting the motion to suppress under a higher standard; therefore, we find this assignment of error to be moot and we decline to address it.  App.R. 12(A)(1)(c).

{¶11}   Nash has presented an assignment of error to prevent reversal under App.R. 3(C)(2), which provides that a cross-appeal is not required where an appellee seeks to defend a trial court's judgment "on a ground other than that relied upon by the trial court," but does not seek to change the judgment or order. *See McCarthy v.*

*Sterling Chem., Inc.*, 1st Dist. Hamilton Nos. C-110805 and C-110856, 2012-Ohio-5211, ¶ 9.

{¶12}  Nash contends that the trial court did not err in granting her motion to suppress because the seizure of her person violated the Fourth Amendment.  She argues that no separate justification existed for her continued detention after the reason for the initial stop had dissipated.  We find no merit in this argument.

{¶13}  The record shows that University of Cincinnati police officer Thomas Wiehe heard an alert put out by the Cincinnati Police Department for a stolen vehicle headed in his direction.  After he saw a car matching the description of the stolen vehicle, he pulled the car over and contacted Cincinnati police.  Wiehe testified that the driver pulled over in a safe and proper manner.  He did not get out of his vehicle or make contact with the driver; instead, he waited for Cincinnati police officers to arrive.

{¶14}  Cincinnati police officer Richard Christoph arrived on the scene.  He checked the car's license plate on the computer prior to approaching the driver, and "it did not come back stolen."  After checking the license plate, Christoph approached Nash, who was the driver, to "make sure it was in fact her car, to see if it had been stolen recently and just had not been taken out of the plate reader system and to see what was going on and make sure everything was okay."

{¶15}  As soon as Christoph made contact with Nash, he noticed a "heavy" odor of alcoholic beverages on her breath.  He also saw an open can of beer in the console right next to her.  He asked Nash if it was her car.  She replied that it was and that she had reported it stolen about a week before.  She said that it had been returned a few days later.

{¶16}  Christoph told her that she had been stopped because the car was still listed as stolen, even though when he "ran [the license plate], it did not come back

5

that way." He then asked her if she had had anything to drink, and she said that she had "had a couple." He then asked her for her driver's license. He also asked her to get out of the car and had her perform field sobriety tests.

{¶17} Nash does not challenge the initial stop of her vehicle. She contends that Christoph's continued detention of her after the check of her car's license plates showed that the car was not stolen violated her Fourth Amendment rights. We disagree.

{¶18} If there is a reasonable and articulable suspicion that an automobile or its occupants are subject to seizure for a violation of the law, stopping that automobile and detaining its occupants are reasonable under the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *State v. Lopez*, 166 Ohio App.3d 337, 2006-Ohio-2091, 850 N.E.2d 781, ¶ 14 (1st Dist.). An officer conducting a traffic stop may ask the driver "a moderate number of questions" to determine her identity and to obtain information confirming or allaying the officer's suspicions. *State v. Jalloh*, 2d Dist. Montgomery No. 24972, 2012-Ohio-5314, ¶ 15, citing *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).

{¶19} Where police have detained an individual to investigate a traffic violation, they may detain the individual for the length of time necessary to check the individual's driver's license, the vehicle's registration and the vehicle's license plate. *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 12; *State v. Hollins*, 3d Dist. Hancock No. 5-10-41, 2011-Ohio-5588, ¶ 30. If, during the investigation of the events that gave rise to the initial stop, the officer discovers additional facts from which it is reasonable to infer additional criminal activity, the officer may lengthen the duration of the stop to investigate those suspicions. *Batchili* at ¶ 15; *Hollins* at ¶ 31.

6

{¶20}   While Nash was not stopped initially for a traffic violation, we find these cases to be analogous because she was validly stopped.  While investigating the stolen-vehicle report, the police officer discovered additional facts from which it was reasonable to infer additional criminal activity.  Wiehe stopped Nash's car upon a suspicion that it might have been stolen.  Even though Christoph had run the license plates and the result had not indicated that the car was stolen, the investigation was not over, and the reason for the stop had not yet dissipated.  Christoph indicated that it was typical to approach the driver as part of the investigation into whether a car was stolen.  When he talked with Nash to determine if it was her car, he noticed a "heavy" odor of alcohol on her breath and he saw an open container of alcohol in her car.  At that point, he had a reasonable and articulable suspicion that Nash may have been driving while impaired due to her consumption of alcohol.  Therefore, his continued detention of her and her vehicle did not violate her Fourth Amendment rights.

{¶21}   The trial court did not err in overruling Nash's motion to suppress on that basis.  Her Fourth Amendment argument does not prevent reversal of the trial court's decision granting her motion to suppress, and we overrule her assignment of error.  Consequently, we reverse the trial court's judgment and remand the matter for further proceedings.

Judgment reversed and cause remanded.

**FISCHER** and **DEWINE, JJ.,** concur.

Please note:

The court has recorded its own entry this date.