[Cite as *State v. Coleman*, 2014-Ohio-1483.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO.  5-13-15

      v.

MARCUS D. COLEMAN,              O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2013 CR 54

Judgment Affirmed

Date of Decision:   April 7, 2014

APPEARANCES:

    *Francisco E. Luttecke* **for Appellant**

    *Elizabeth H. Smith*  **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, Marcus D. Coleman, appeals the Hancock County Court of Common Pleas' judgment entry denying his motion to suppress evidence obtained following a traffic stop along U.S. Interstate 75 ("I-75"). We affirm.

{¶2} During the early morning hours of October 13, 2012, Sergeant Kurt Beidelschies with the Ohio State Highway Patrol observed Coleman traveling southbound in a gray, four-door Dodge Sedan on I-75 within the City of Findlay, Hancock County, Ohio. (May 2, 2013 Tr. at 20, 25-26). Beidelschies observed Coleman's vehicle pass a vehicle without using his turn signal and then pull in front of the vehicle, causing the driver of the other vehicle to apply his or her brakes when Coleman's vehicle entered its lane of travel. (*Id.* at 27). Beidelschies then initiated a traffic stop for the turn-signal violation. (*Id.* at 27-28). When Beidelschies informed Coleman that he stopped him for a turn-signal violation, Coleman responded, "Sorry about that." (*Id.* at 28). Beidelschies noted that Coleman was "overly nervous" and the inside of Coleman's vehicle had "an absolutely overwhelming odor of deodorizer." (*Id.* at 30). Coleman was the only occupant of the vehicle. (*Id.* at 28).

{¶3} Coleman provided Beidelschies with a Tennessee ID card, with Coleman's photo but the name Timothy Phelps, and a rental agreement for the

vehicle in the name of Rodney Summers. (*Id.* at 28-30). The rental agreement indicated that the vehicle had been rented the day before at 3:55 p.m. in Cincinnati, Ohio and that Summers was the only authorized operator of the vehicle. (*Id.* at 29). When Coleman provided the Tennessee ID card, Beidelschies asked Coleman if his license was valid, and Coleman stated it was not. (*Id.* at 30). Beidelschies then asked Coleman to come back to his cruiser, so Beidelschies could determine if Coleman had a valid driver's license and inquire about the rental agreement. (*Id.* at 31). After Beidelschies determined that Coleman—who he still believed to be Timothy Phelps—did not have a valid driver's license, Beidelschies advised Coleman that he was going to issue a citation for driving without a license and tow Coleman's vehicle. (*Id.* at 35).

{¶4} Because Coleman's vehicle was going to be towed, Beidelschies performed an administrative search of the vehicle. (*Id.* at 36). During this administrative search, Beidelschies located a plastic grocery bag with ten smaller bags containing yellow pills, which Beidelschies believed was ecstasy, a Schedule I controlled substance. (*Id.* at 41). Beidelschies also located dryer sheets inside the grocery bag and stuffed between the center console and the driver and passenger seats. (*Id.* at 43-44). At that point, Beidelschies placed Coleman under arrest for possession of drugs. (*Id.* at 42).

{¶5} On February 19, 2013, the Hancock County Grand Jury indicted Coleman on one count of aggravated possession of drugs in violation of R.C. 2925.11(A), a first-degree felony. (Doc. No. 1).[1]

{¶6} On February 27, 2013, Coleman appeared with counsel at arraignment and entered a plea of not guilty. (Doc. No. 5).

{¶7} Coleman appeared pro se with standby counsel throughout the proceedings. (R368-574); (R369-2142). Coleman, pro se, filed a motion to suppress in February 2013, arguing that the stop was based on racial profiling in violation of the Equal Protection Clause, Trooper Beidelschies lacked a warrant, traffic violation, or other clear and articulable facts justifying the traffic stop, and the inventory search was not conducted in accordance with Ohio State Highway Patrol policy and was a fishing expedition. (Doc. No. 59). On March 8, 2013, the State filed a memorandum in opposition. (Doc. No. 16).

{¶8} On May 2, 2013, the trial court held a suppression hearing. On May 16, 2013, the trial court issued a decision denying the motion to suppress. (Doc. No. 69).

{¶9} On May 17, 2013, the trial court held a change-of-plea hearing, and Coleman entered a plea of no contest to the indictment. (May 17, 2013 Tr. at 6);

---

[1] The original indictment was issued on October 16, 2012 and assigned case no. 2012 CR 260; however, the Hancock County Grand Jury re-indicted Coleman for the same offense and the case was reassigned case no. 2013 CR 54. (Doc. No. 9). After Coleman was re-indicted, the trial court dismissed the prior case on the State's motion. (*Id.*). The pleadings in the prior case were transferred to the new case. (*Id.*).

-4-

(Doc. No. 72).  The trial court subsequently found Coleman guilty.  (May 17, 2013 Tr. at 27); (Doc. No. 72).

{¶10} On May 28, 2013, the trial court sentenced Coleman to nine years imprisonment.  (May 28, 2013 Tr. at 9).  The trial court filed its judgment entry of sentence that same day.  (Doc. No. 79).[2]

{¶11} On June 6, 2013, Coleman filed a notice of appeal.  (Doc. No. 99). Coleman raises one assignment of error challenging the trial court's denial of his motion to suppress evidence.

### Assignment of Error

**The trial court erred in overruling Marcus D. Coleman's Motion to Suppress, in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and Sections 2 and 14, Article I of the Ohio Constitution.**

{¶12} In his sole assignment of error, Coleman first argues that the trial court's factual findings underpinning its legal conclusions are not supported by competent, credible evidence.  Although Coleman acknowledges that "[t]he trial court's findings of fact regarding [the] stop * * * mirrored Sgt. Beidelschies's testimony," Coleman asserts that had the trial court more carefully reviewed the testimony, it would have discovered inconsistencies in Beidelschies' testimony.

{¶13} Second, Coleman argues that he proved by a preponderance of the evidence that Beidelschies stopped him because of his race, which is a violation of

---

[2] The trial court's judgment entry mistakenly states that Coleman pled guilty to the indictment.  The trial court appears to have caught this mistake in subsequent entries.  (*See* Doc. No. 97).

the Equal Protection Clause. Coleman argues that the proper remedy for the Equal Protection Clause violation is suppression of the evidence.

{¶14} A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *See State v. Carter*, 72 Ohio St.3d 545, 552 (1995).

{¶15} When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8. With respect to the trial court's conclusions of law, however, our standard of review is de novo; and, therefore, we must decide whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

{¶16} Coleman argues that several inconsistencies in Beidelschies' testimony raise an issue of whether the trial court's factual findings are supported by competent, credible evidence. In particular, Coleman points to Beidelschies' testimony concerning: (1) his use of the cruiser's headlights to count occupants in motor vehicles for officer safety; (2) the lack of a cruiser video in this case and several other cases where Beidelschies was the officer initiating the traffic stop; and, (3) the general traveling public's natural reaction of braking after seeing a law

enforcement officer alongside of the highway. We will briefly address each of these issues.

**{¶17}** Coleman argues that Beidelschies' testimony that he uses the high beam headlights of his patrol cruiser to identify the number of occupants in motor vehicles as they pass his cruiser lacks credibility. (Appellant's Brief at 7). Although unclear from his brief, it appears that Coleman uses this allegedly inconsistent testimony to discredit Beidelschies' testimony that he witnessed Coleman commit a traffic violation. The evaluation of evidence and credibility determinations are issues for the trier of fact, however. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992); *Burnside*, 100 Ohio St.3d 152, at ¶ 8.

**{¶18}** The trial court's findings of fact track Beidelschies' testimony at the suppression hearing and, therefore, are supported by competent, credible evidence. To the extent that Coleman raises the headlight issue to prove that Beidelschies was racially profiling him—an allegation that Beidelschies refuted on the stand—this Court has rejected racial profiling as a legal basis for the suppression of evidence. (May 2, 2013 Tr. at 66, 75-76); *State v. Chambers*, 3d Dist. Hancock No. 5-10-29, 2011-Ohio-1305, ¶ 22 (citations omitted). *See also United States v. Cousin*, 448 Fed.Appx. 593, 594 (6th Cir.2012) (per curiam) (explaining that *United States. v. Nichols*, 512 F.3d 789, 794-795 (6th Cir.2008) precludes the application of the exclusionary rule for alleged racial profiling).

{¶19} Next, Coleman argues that "all the issues surrounding Sgt. Beidelschies's actions would have been resolved by video footage of the alleged traffic violation and the stop." (Appellant's Brief at 7). Coleman argues that Beidelschies has had difficulty with his video cameras in other cases and this discredits Beidelschies' testimony. (*Id.* at 7-8). We reject this argument. Besides the fact that credibility determinations are for the trier of fact, *Mills* at 366, law enforcement's general practice is to activate their cruiser video equipment *after* witnessing a traffic violation to record their pursuit and subsequent stop, so it is highly unlikely that a video would have been created to resolve whether Coleman committed a traffic violation. Beidelschies testified that, prior to the start of his shift, he discovered that his video equipment was nonoperational and informed dispatch about it; and, he further testified that the dashboard camera has since been replaced with a completely new video system. (May 2, 2013 Tr. at 48-49, 93); (State's Ex. 2).

{¶20} Regardless, it is speculative to say that the video, even if created, would have caught the traffic violation, because Beidelschies testified that it occurred after Coleman passed his cruiser. (May 2, 2013 Tr. at 27, 57). *United States v. Younis*, cited by Coleman, is inapposite, because the video equipment in that case was operational and Beidelschies did not activate the record function. 890 F.Supp.2d 818, 819 (N.D.Ohio 2012). Here, Beidelschies testified that the

recording equipment was nonoperational the evening of the traffic stop. (May 2, 2013 Tr. at 48-49). When asked why the recording equipment was not working, Beidelschies testified that "[o]ur system crashes quite a bit * * * sometimes fuses blow. In this particular circumstance I believe that our entire system was down." (*Id.* at 48). (*See also id.* at 93 and State's Ex. 2).

{¶21} Coleman also argues that Beidelschies' testimony that Coleman abruptly changed lanes cutting off another motorist after just passing Beidelschies' cruiser is not plausible. Essentially, Coleman argues that he would not have been foolish enough to commit a traffic offense in Beidelschies' presence. We also reject this argument. If this Court were to catalogue the various foolish missteps of the convicted criminals appearing before it, much ink would be wasted.

{¶22} Coleman also argues that applying his brakes should not have constituted a basis for targeting him for a traffic stop, because "innocent motorists" apply their brakes often when they see a law enforcement officer parked along the highway. This argument is meritless as well. Coleman did not just apply his brakes after seeing Beidelschies; instead, Coleman passed a vehicle without signaling, and then pulled in front of the vehicle without signaling and without sufficient space, causing the vehicle's operator to apply his or her brakes. The trial court's finding that Coleman failed to use his turn signal was supported by Beidelschies' testimony at the hearing. (May 2, 2013 Tr. at 27-28).

{¶23} Finally, Coleman argues that Beidelschies stopped him because he is black and the traffic violation was mere pretext. This argument lacks merit. Aside from the fact that the record fails to establish racial motivation on Beidelschies' part, this Court has rejected the application of the exclusionary rule in cases of alleged racial profiling. *Chambers*, 2011-Ohio-1305, at ¶ 22. Coleman has failed to present any compelling reason to question the continued application of this rule. *Cousin*, 448 Fed Appx. at 594 (*Nichols* precludes the application of the exclusionary rule for alleged racial profiling).

{¶24} Coleman's assignment of error is, therefore, overruled.

{¶25} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**